[No. 27172-5-I.   Division One.   January 21, 1992.]

KING COUNTY WATER DISTRICT NO. 75, *Respondent*, v. THE PORT OF SEATTLE, *Appellant*.

---

*Thomas H. Tanaka* and *Craig R. Watson,* for appellant.

*Philip A. Talmadge* and *Talmadge & Cutler, P.S.,* for respondent.

PEKELIS, J. — The Port of Seattle (Port) appeals from orders entering a declaratory judgment and a permanent injunction in favor of King County Water District No. 75 (District).[1] The Port contends that the trial court erred in declaring that the District had exclusive authority to provide water services within the District's service area and in permanently enjoining the Port from providing such services within the District's service area for the benefit of Port-owned property. We reverse.

I

This matter came before the trial court on the following stipulated facts: The Port and the District are both duly constituted municipal corporations operating within King County. The Port's boundaries are coterminous with those of King County. The District's boundaries abut the south and east edges of the Seattle-Tacoma International Airport (STIA), which is owned and operated by the Port.

The Port provides water services for the benefit of the STIA. In the past, the Port has purchased water services from the District for Port property located within the District's service area. The Port has maintained as many as 160 separate accounts with the District.

The present controversy arose when the Port commenced construction of several improvements on certain property it acquired over the past 20 years. The property is part of the

---

[1] King County Water District No. 75 has been renamed the Highline Water District.

STIA and is also located within the District's service area.[2] The improvements included a parking lot for Port and tenant employees, a holding facility for buses and taxis, a tenant airline flight kitchen facility, and other similar facilities. The Port proposed to provide its own water services for the benefit of the property by extending a waterline or lines to it from the STIA.

The District objected to the Port's proposal. The District has adequate existing waterlines in place to provide water services to the recently acquired Port property. As part of its regular capital improvement program, the District was in the process of upgrading several of these lines to enable it to increase service to the Port-owned property under construction.

The District had included the Port-owned property in its comprehensive water plan, which sets forth the long-range water plan for the District's service area and for the region. On the assumption that the water demand for the Port-owned property would be part of the District's future demand needs, the District had made major capital improvements in its service area. In 1982, the District sold municipal bonds, obligating it to preserve revenues from the entire service area or establish a restricted monetary reserve in order to provide an adequate revenue base for the bond retirement. These bonds are outstanding.

Faced with the Port's proposal to service its recently acquired property itself, the District filed an action for injunctive relief on September 17, 1990. The District sought a declaratory judgment that the Port did not have the "authority to extend water service into the District's service area". The District also sought to permanently enjoin the Port from "transporting water or constructing facilities for same into the District service area". In response, the Port contended that it was authorized by statute to provide water services for the benefit of its own property, even where such property is located within a local water district.

---

[2]The property is directly adjacent to, but outside the STIA's original boundaries.

The trial court construed RCW 53.08.040, which authorizes port districts to provide water services for port-owned property, as granting only limited authority to provide such services. Specifically, the trial court held that a port district's authority to provide water services for port-owned property located within the service area of a local water district was limited to situations in which, unlike here, the water district has consented and the water district is neither willing nor able to provide such services on a reasonable and nondiscriminatory basis. Thus, the trial court entered an order declaring that the District had "exclusive authority" to provide water services within its service area. The order also permanently enjoined the Port from providing water services in the District's service area without the District's approval. The Port appeals from these orders.

As a preliminary matter, we address the District's contention that the Port is collaterally estopped from asserting that RCW 53.08.040 authorizes it to provide water services for the benefit of its own property when such services are otherwise available. The District bases this contention on the Port's participation in proceedings before the King County Boundary Review Board, in which, the District claims, the Board "determined" that RCW 53.08.040 denied the Port the right to operate a sewer system on its property where other sewer systems were prepared to provide such services. The Port subsequently entered into a stipulation which accepted the Board's final decision. However, in its final decision, the Board expressly stated that it was making "no determination" regarding the Port's argument that RCW 53.08.040 authorized it to operate a sewer system on its property. Because the Port's authority under RCW 53.08.040 was not previously determined, the Port was not collaterally estopped from litigating this issue here.[3] *See Shoemaker v. Bremerton*, 109 Wn.2d 504, 508, 745 P.2d 858 (1987).

---

[3] The District's contention that the Port effectively conceded the dispositive legal issues in this appeal because it failed to assign error to each of the trial court's conclusions of law is meritless. RAP 10.3(g) requires a separate assignment of error for each *instruction* or *finding of fact* objected to. All other

## II

The Port's principal claim is that it has express authority under RCW 53.08.040 to provide water services for the benefit of its own property, even where, as here, such property is located within the service area of a local water district. The District disagrees, contending that certain amendments to RCW 53.08.040 limit the Port's authority. In addition, the District claims that RCW 57.08.010(1)(d) provides it with exclusive authority to provide water services within its own service area.

The interpretation of a statute is a matter of law and is subject to independent appellate review. *Schmitt v. Cape George Sewer Dist. 1*, 61 Wn. App. 1, 5, 809 P.2d 217 (1991). The court's primary purpose in interpreting a statute is to ascertain and give effect to the intent of the Legislature. *State v. Keller*, 98 Wn.2d 725, 728, 657 P.2d 1384 (1983). The intent must be determined primarily from the language of the statute itself. A municipal corporation is limited in its powers to those expressly granted and to those necessarily implied or incident to the declared objects and purposes of the corporation. *Washington Pub. Util. Dists.' Utils. Sys. v. PUD 1*, 112 Wn.2d 1, 6, 771 P.2d 701 (1989). If there is a doubt about a claimed grant of power, it must be denied. *Port of Seattle v. State Utils. & Transp. Comm'n*, 92 Wn.2d 789, 795, 597 P.2d 383 (1979).

Port districts are authorized to provide water services pursuant to RCW 53.08.040. As enacted, RCW 53.08.040 provided that:

> A [port] district may improve its lands by dredging, filling, bulkheading, providing waterways or otherwise developing such lands for sale or lease for industrial and commercial purposes.

Laws of 1955, ch. 65, § 5, p. 407. In 1967, this provision was amended to add the following:

---

claimed errors which, as is the case here, are included in an assignment of error or are plainly disclosed in the associated issue pertaining thereto are clearly reviewable. *See* RAP 10.3(g); *BC Tire Corp. v. GTE Directories Corp.*, 46 Wn. App. 351, 355, 730 P.2d 726 (1986), *review denied*, 108 Wn.2d 1013 (1987).

Where sewer and water utilities are constructed and operated by the port as an incident to servicing port lands, property owners in areas adjacent to such system may be permitted to connect thereto under terms, conditions and rates to be fixed and approved by the port commission. . . . *Provided*, That no port shall enter into an agreement or contract to provide sewer and/or water utilities if substantially similar utilities are available *to such adjacent property owners* from another source (or sources) which is willing to provide such utilities on a reasonable and nondiscriminatory basis.

(Italics ours.) Laws of 1967, ch. 131, § 1, p. 623.

We address first the issue of whether RCW 53.08.040 grants the Port express authority to provide water services for the benefit of its own property. The plain language of RCW 53.08.040, as amended in 1967, expressly authorizes port districts to provide incidental water services for the benefit of port-owned property. Our Supreme Court has stated that port districts have possessed this authority since their creation in 1911. *See Port of Tacoma v. Taxpayers*, 53 Wn.2d 734, 742, 336 P.2d 872 (1959). The only limitation on this authority is imposed in a proviso which bars port districts from providing water services to "adjacent property owners" where substantially similar services are otherwise available on a reasonable and nondiscriminatory basis.

In 1972, further amendments to RCW 53.08.040 were enacted. The District contends that these amendments severely limited the authority of port districts to provide incidental water services. The District interprets the proviso in RCW 53.08.040, as amended, to bar port districts from providing incidental water services for port-owned property where substantially similar services are available from another source on a reasonable and nondiscriminatory basis or where an available source has not consented. We disagree.

As amended in 1972, RCW 53.08.040 provides, in pertinent part:

A [port] district may . . . acquire, construct, install, improve, and operate sewer and water utilities to serve its own property and other property owners under terms, conditions, and rates to be fixed and approved by the port commission. A

[port] district may also acquire . . . maintain and operate [pollution control] facilities . . ., and may make such facilities available to others . . .. *And provided further*, That no port shall enter into an agreement or contract to provide sewer and/or water utilities or pollution control facilities *if substantially similar utilities . . . are available from another source* (or sources) which is able and willing to provide such utilities . . . on a reasonable and nondiscriminatory basis unless such other source (or sources) consents thereto.

(Italics ours.) We note first that RCW 53.08.047, which was enacted as part of the 1972 amendments, provides that nothing in RCW 53.08 should be construed "as a restriction or limitation upon any powers which a [port] district might otherwise have under any laws of this state, but shall be construed as cumulative."

It appears that the principal change effected through the amendments of 1972 was the addition of pollution control facilities as a service port districts were authorized to provide. RCW 53.08.040, as amended, authorizes port districts to develop such facilities for port-owned property and to make them available "to others". RCW 53.08.040 also expanded port districts' grant of authority by permitting port districts to develop water utilities to serve not only port-owned property and "adjacent property owners", as permitted before the amendments, but "other property owners". Finally, the phrase "to such adjacent property owners" was deleted from the proviso.

The District argues that by deleting the phrase "to such adjacent property owners" from the proviso, the Legislature intended to broaden its scope by barring port districts from developing incidental water services or pollution control facilities *even* for port-owned property if such services and facilities are otherwise available.

We do not interpret the amended proviso as imposing this drastic limitation on the authority of port districts. The District's construction is completely inconsistent with the purpose of the 1972 amendments, which was to *expand,* not limit, the powers of port districts. *See* RCW 53.08.047. Furthermore, the only internally consistent reading of RCW

53.08.040 is that only the authority of port districts to make water services and pollution control facilities available *to other property owners* is limited by the proviso. Since the limitation is specifically directed at the authority of port districts to enter into "an agreement" or "contract", it is evident that the proviso refers to third parties, *i.e.*, other property owners, not to port districts themselves.

■ We thus conclude that RCW 53.08.040 authorizes the Port to provide incidental water services for the benefit of its own property. We also conclude that RCW 53.08.040 itself imposes no limitation on the Port's authority to provide such services even where its property is located within a local water district.

However, the District asserts that RCW 57.08.010(1)(d) grants it *exclusive* authority to provide water services to property located within its service area.[4] The District contends that the exclusiveness of its authority should be inferred from (1) the broad grant of authority delegated to water districts under this section to plan, regulate, and control water services within their service areas; (2) the directive in RCW 57.02.030 that RCW 57.02 be liberally construed; (3) the prohibition in RCW 57.04.070 against the creation of a new water district within an established water district; and (4) common sense, which dictates that where the Legislature has created a water district to serve a particular area, it could not have intended that there be competition for hookups within that area.

■ We are not persuaded by the District's assertion. There is a glaring absence of any language in RCW 57.08 indicating that the District's authority to provide water services is exclusive. Furthermore, the Legislature's express grant of authority in RCW 53.08.040 to port districts to

---

[4] RCW 57.08.010(1) provides, in pertinent part:

"(d) A water district may construct, condemn and purchase, add to, maintain and supply waterworks to furnish the district and inhabitants thereof, and any city or town therein and any other persons, both within and without the district, with an ample supply of water for all uses and purposes public and private with full authority to regulate and control the use, content, distribution, and price thereof in such a manner as is not in conflict with general law".

provide incidental water services for port-owned property argues against the District's contention that the Legislature intended to give water districts exclusive authority to provide water services to property located within their service areas.

Finally, the District argues that even if it does not possess exclusive authority under a plain reading of either of the statutes discussed above, this court should interpret the grant of power to the Port under RCW 53.08.040 narrowly. The District contends that authorizing the Port to provide water services for property located within the District's service area would contravene the public policy against duplication of public functions in the same area by two municipal corporations. The District relies on *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 382 P.2d 639 (1963) in support of its argument.

In *Alderwood*, a real estate developer sought to develop a subdivision in one water district with water services purchased from an adjacent water district. *Alderwood*, 62 Wn.2d at 319-20. The adjacent water district argued that a statutory provision authorizing it to provide water services to property owners outside its service area permitted it to furnish such services to property owners located within another water district. Our Supreme Court acknowledged that such duplication is normally impermissible "unless it is provided for in some manner by statute". *Alderwood*, 62 Wn.2d at 321. The court found that although the provision authorizing water districts to provide water services outside their service area did not impose any limitation upon that authority, a separate provision in the same statute specifically prohibited the geographical overlapping of water districts. *Alderwood*, 62 Wn.2d at 321-22. Based on this prohibition and a requirement that water districts prepare comprehensive water plans, which the court feared would be rendered "meaningless" if water districts were allowed to compete for potential customers by invading each other's territory, the court concluded that duplication of water ser-

vices in the same area was not authorized by statute. Thus, the court held that the adjacent water district could not provide water services to property owners located within another water district. *Alderwood*, 62 Wn.2d at 321-23.

■ *Alderwood* does not control the issue presented in this case. Here, neither the port district statute nor the water district statute contains any express or implied statutory prohibition against overlapping authority to provide water services for the benefit of port-owned property located within a water district. Moreover, the Port's effort to provide such incidental services does not constitute a competitive "invasion" of the District by another water district which concerned the court in *Alderwood*.

■ The District raises other public policy considerations which it argues militate against recognizing the Port's authority to provide water services for Port-owned property located within a local water district. However, the wisdom or social desirability of authorizing port districts to provide water services for the benefit of their own property, even where it is located within the boundaries of a local water district, is not for the courts to decide. It is our duty to determine what the Legislature *intended*, which intent is to be deduced primarily from what the Legislature said. *United Parcel Serv., Inc. v. Department of Rev.*, 102 Wn.2d 355, 362-63, 687 P.2d 186 (1984). RCW 53.08.040 does authorize the Port to provide water services for the benefit of its property which is located within the District's service area. Accordingly, the trial court's injunctive order is vacated and reversed.

WEBSTER, A.C.J., and BAKER, J., concur.

Review denied at 119 Wn.2d 1002 (1992).