22 P.3d 818 (2001)
106 Wash.App. 104
Thomas ROBINSON; Carlene Kiel; and Jessica Trupin, individually and on behalf of all others similarly situated, Appellants,
v.
AVIS RENT A CAR SYSTEM, INC.; National Car Rental System, Inc.; and Alamo Rent-A-Car, Inc., Respondents.
No. 46106-1-I.
Court of Appeals of Washington, Division 1.
May 7, 2001.
*820 Spencer Hall, Arthur Cary Claflin, Kathleen Cullen Van Olst, Hall Zanzig Widell PLLC, Seattle, for Appellants Thomas Robinson/Carlene Kiel, Jessica Trupin.
Susan Elizabeth Lewis Barnes, Seattle, Gail E. Lees, Chad S. Hummel, Gibson Dunn & Crutcher LLP, Los Angeles, CA, for Respondent Avis Rent A Car System.
Kelly Patrick Corr, Rachel McCall, Guy Paul Michelson, Seattle, Jonathan Edward Mansfield, San Francisco, CA, Michael Dennis McKay, Seattle, for Respondents National Car Rental System, Alamo Rent-A Car.
Douglas Dunbar Walsh, Office of the Attorney General, Assistant Attorney General, Tacoma, for Amicus Curiae, State of WA/Attorney General.
*819 COX, J.
At issue is whether respondent car rental companies violated the Consumer Protection Act (CPA) by their practice of "unbundling" concession fee charges from car rental rates when quoting prices to consumers renting cars at the Seattle-Tacoma Airport. We hold that the challenged practices are not exempt from the CPA. We further hold that these private plaintiffs failed to establish that the challenged practices are either unfair or deceptive. They also failed to show a causal link between the practices and claimed injury. Thus, they failed to establish essential elements of their claim. Accordingly, we affirm the summary judgment dismissing their action.
*821 Avis Rent A Car system, Inc. (Avis), National Car Rental System, Inc. (National), and Alamo Rent-A-Car, Inc. (Alamo) (collectively "the car rental companies"), each lease space at the Seattle-Tacoma Airport from the Port of Seattle. Each space includes counter/office space and car storage areas. The terms and conditions of each lease are contained in each "Full Service Rental Car Agreement and Concession Agreement" (Concession Agreement) that the companies executed. The agreements require each car rental company to pay a fixed monthly rent plus a "concession fee" of 10 percent of its gross monthly revenues derived from airport operations.
Paragraph 5b of each Concession Agreement states: "[c]oncessionaire shall not separately add to customer billing any additional fees, such as `per trip fees', `concession fees', `rents' or any other airport charge."[1] Accordingly, the car rental companies did not initially separately charge their airport customers an airport concession fee.
In March 1998, the Port informed the car rental companies that it would no longer enforce paragraph 5b of the Concession Agreement to the extent that it prohibits the car rental companies from separately charging its customers the 10 percent concession fee. Shortly thereafter, the car rental companies began separately charging the concession fee in addition to the basic rental rate to its airport customers. The parties refer to this practice of separating the basic car rental rate from the 10 percent concession fee charged to customers as "unbundling."
Following the unbundling of the concession fee from the basic rental rate, Thomas Robinson, Carlene Kiel, and Jessica Trupin (collectively referred to as "consumers") each rented cars from one or more of the car rental companies at their respective airport locations. Each consumer obtained quotations of charges by telephone using toll free numbers provided by the relevant companies. Counsel agreed during oral argument of this case that the sole means by which these consumers obtained quotations was by telephone. Each consumer paid a concession fee in addition to the basic rental rate when they rented cars.
Robinson, Kiel, and Trupin commenced this action against the car rental companies on behalf of themselves and all similarly situated consumers. They sought class certification. They alleged that "billing a separate [airport concession fee] in addition to the quoted rental rate for a car" is unfair and deceptive. They also claimed that "stating or implying that the airport charge imposed by [the car rental companies] is a tax or other charge imposed on consumers by the Port of Seattle" is an unfair and deceptive practice. The trial court granted the car rental companies' motion for summary judgment, and did not reach plaintiffs' motion to certify their case as a class action.
The consumers appeal only the dismissal of their CPA claim. We granted the motion of the Washington State Attorney General to file an amicus curiae brief.[2]

Exemption
We first consider the car rental companies' claim that the practices challenged here are exempt under RCW 19.86.170.[3] Specifically, they claim that the Port is a "regulatory body" and "permits" such practices. Thus, according to the car rental companies, the challenged practices are exempt from the CPA. We disagree.
We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[4] We consider all facts and reasonable inferences *822 in the light most favorable to the nonmoving party.[5] We review questions of law de novo.[6]
The moving party bears the initial burden of showing the absence of a genuine issue of material fact.[7] Once met, the burden shifts to the party with the burden of proof at trial to make a showing sufficient to establish the existence of an element essential to that party's case.[8] If the claimant fails to meet that burden, the trial court should grant the motion because there can be no genuine issue of material fact given that a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[9]
Here, there is no disputed issue of fact concerning exemption. The Port of Seattle decided not to enforce the portion of its Concession Agreement with each of the car rental companies that governed unbundling. Thus, for purposes of summary judgment, the legal question is whether the companies are entitled to a judgment as a matter of law because the challenged practices are exempt. We resolve that question by reviewing the exemption portion of the CPA.
RCW 19.86.170 provides in part that:
Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state ... [.][10]
RCW 19.86.920 expressly states that courts should liberally construe the CPA so that "its beneficial purposes may be served." In order to serve those beneficial purposes, we must narrowly construe the scope of the exemption provisions of the CPA.[11]
Focusing on the "other regulatory body or officer" clause of the exemption statute, the car rental companies contend that the Port is a "regulatory body" within the act and that it "permitted" the practice of unbundling by agreeing not to enforce the prohibition contained in the Concession Agreements. Based on these premises, the companies conclude that unbundling is exempt activity under RCW 19.86.170. This argument is unpersuasive.
The statute clearly shows that the scope of the exemptions for actions or transactions by regulatory bodies or officers other than the insurance commissioner, the utilities and transportation commission, or the federal power commission is different from these three entities. Therefore, it is not enough to show that the Port is a "regulatory agency" and that it "permitted" unbundling. The car rental companies must also show that unbundling is within the "statutory authority" of the Port to permit.[12] The car rental companies have failed to establish any such authority.
As a municipal corporation, the Port is limited in its powers to those expressly granted by statute and to those necessarily implied or incident to the declared objects and purposes of the corporation.[13] If there *823 is doubt about a claimed grant of power, it must be denied.[14]
The statutes on which the car rental companies rely do not expressly or impliedly establish the Port's authority to permit unbundling for purposes of exemption from the CPA. RCW 14.08.330 states that "[e]very airport ... controlled and operated by any municipality ... shall ... be under the exclusive jurisdiction and control of the municipality[.]" Nothing in this statute expressly or impliedly deals with unbundling for purposes of exemption from the CPA. Likewise, RCW 14.08.120(6) grants to the Port the authority "[t]o determine the charges or rental for the use of any properties under its control and the charges for any services or accommodations, and the terms and conditions under which such properties may be used[.]" But this statute neither expressly nor impliedly grants to the Port the power to permit unbundling for purposes of exemption under the CPA. In short, these statutes do not support any claim of exemption from the CPA.[15]
Because these statutes do not grant the power that the car rental companies claim, we need not address whether the Port's decision to not enforce a provision of its Concession Agreements "permitted" the practices challenged here. Moreover, we need not consider the consumers' alternative argument that the Port is not a "regulatory body" within the meaning of RCW 19.86.170.

Prima Facie Case
The consumers next argue that the trial court erred in dismissing their CPA claims. We disagree.
To establish a violation of the CPA, a private plaintiff must establish five elements: (1) an unfair or deceptive act or practice; (2) occurring within trade or business; (3) affecting the public interest; (4) injuring the plaintiff's business or property; and (5) a cause relation between the deceptive act and the resulting injury.[16] As to elements (1) and (4), "[a] causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff."[17] "A plaintiff establishes causation if he [or she] shows the trier of fact that he [or she] relied upon a misrepresentation of fact."[18] The causation requirement is met where the defendant "induced" the plaintiff to act or refrain from acting.[19] Injury and causation are established if the plaintiff loses money because of unlawful conduct.[20] If any element is not satisfied, there can be no successful CPA claim.[21] The standard for a private right of action differs from an action by the State under the CPA.[22]
Whether conduct constitutes an unfair or deceptive trade practice under the CPA is an issue of law that we review de novo.[23] Decisions of the federal courts and *824 final orders of the Federal Trade Commission (FTC) construing the federal statutes similar to the CPA may guide the decisions of this court.[24]
Here, the initial focus of our inquiry is whether the record establishes the first element of the consumers' prima facie case. Is unbundling the concession fee from the quoted car rental rate unfair or deceptive?.
As a preliminary matter, we reject National's and Alamo's claim that the consumers did not challenge below the manner in which the concession fee is disclosed as violative of the CPA. Although the trial court initially did not address the issue of sufficient disclosure,[25] it later recognized that the consumers' CPA claim also encompassed challenges to the manner in which the concession fee is disclosed.[26] Accordingly, the trial court's order granting summary judgment dismissed both "[p]laintiffs' claim relating to the practice of unbundling airport concession recoupment fees and the manner of disclosure of those fees."[27]
We first consider the practice of unbundling. The essence of the consumers' claim is that the practice of quoting a car rental rate that does not include the concession fee that is also charged is actionable.[28] To prove that such a practice is an unfair or deceptive act, a claimant need not show intent to deceive or defraud on the part of the seller, only that the practice had the capacity to deceive a substantial portion of the public.[29]
We first note that quoting a car rental price that does not include a concession fee that is also charged would have the capacity to deceive the purchasing public, absent disclosure of that fee. That is because the lack of disclosure would fail to apprise consumers of the true price of the car rental.
In Hiner v. Bridgestone/Firestone, Inc.,[30] this court stated that knowing failure to reveal something of material importance is "deceptive" within the CPA. Applying that principle here, the failure to disclose the concession feea material factwould be deceptive.
We also note that the relevant time period for purposes of analyzing whether full disclosures are made is when the car rental *825 companies give potential customers a quotation. It is not later at the airport car rental counter when customers sign the car rental agreement containing information about the concession fee and pick up their cars. That is because a practice is unfair or deceptive if it induces contact through deception, even if the consumer later becomes fully informed before entering into the contract.[31]
Here, there is no genuine issue of fact over whether the car rental companies disclosed the concession fee at the times that consumers obtained telephone quotations. In support of its motion for summary judgment, the car rental companies submitted affidavits from its reservation managers. They all state that all telephone reservation agents are trained to disclose the concession fee.[32] National and Alamo also submitted portions of training manuals provided to telephone reservation agents that instruct them to quote concession fees whenever a rental rate is given. Alamo also showed information from their computer "city screen" viewed by its reservation agents. For the Seattle-Tacoma airport "city screen," the computer screen displays the 10% concession fee. And National submitted a tent card distributed to its reservation agents to put on their desks, which reads in part, "Remember to quote all Surcharges, Concession Fees[,] and other Additional Charges when quoting a rate."[33]
In response to the above showing, consumers, who bore the burden of proof at trial, were required to establish a genuine issue of material fact. More specifically, they had to show that the moving parties committed an unfair or deceptive act by failing to disclose that the concession fee would also be charged.[34] None made the required showing.
Kiel, who rented cars from National and Avis, stated in her deposition testimony that she could not recall whether National and Avis' phone agents disclosed the concession fee when she called them to make a reservation.[35] And Robinson indicated in his deposition testimony that he was uncertain whether the National phone agent told him about the concession fee.[36] We conclude *826 that, on this record, Kiel and Robinson's statements that they could not recall whether they were told about the concession fee are insufficient to raise a genuine issue of material fact showing that the car rental companies failed to disclose material information.[37]
Trupin cannot show a genuine issue of material fact either. She also stated in her deposition testimony that she could not recall whether the Alamo phone agent informed her of the concession fee. Moreover, Trupin testified that the Alamo phone agent quoted her a total rental cost of $254.50, including all fees and taxes and that the actual cost of her rental was indeed $254.50.[38] Thus, there was no discrepancy between the quotation and the ultimate charge.
The consumers also failed to show that a genuine issue of material fact exists as to the causation element of their CPA claim. Specifically, they failed to show a causal relationship between the car rental companies' practice of unbundling and their claimed injury. A plaintiff establishes the causation element of a CPA claim if he or she shows the trier of fact that he or she relied upon a misrepresentation of fact.[39]
As discussed above, there was no unfair or deceptive act here because the car rental companies disclosed the concession fee to the consumers in its telephone quotations. Accordingly, the consumers' failure to establish the causation element, essential to their CPA claim, also supports a grant of summary judgment in favor of the car rental companies.
The Federal Trade Commission (FTC) cases upon which the consumers rely to support their claim that the car rental companies' conduct here is deceptive are distinguishable. In Resort Car Rental System, the court upheld the FTC's determination that it was deceptive for a car rental company to use the slogan "Dollar-A-Day" because the slogan "has a decisive connotation for which any qualifying language would result in a contradiction in terms."[40] But there was no similar slogan used by the car rental companies here, and there is nothing deceptive about the manner of disclosure here.
In F.T.C. v. World Travel Vacation Brokers, Inc.,[41] a travel company advertised and solicited customers to purchase $29 certificates that could be redeemed for a roundtrip airfare to Hawaii, provided that customers booked hotel reservations with the travel company. The 7th circuit upheld the district court's finding that it was misleading to advertise $29 airfare without disclosing that the full airfare cost was actually added into the hotel cost determination.[42] In contrast, the car rental companies fully disclosed the concession fee.
*827 In Matter of Western Star Beef, Inc.,[43] the FTC determined that meat seller's advertisements, which read "beef halves only 39 ¢ lb.", were misleading because they did not reflect the total price per pound for the meat where purchasers were required to pay an additional charge for cutting and wrapping meat. Although the meat seller's advertisements did not disclose the cutting and wrapping fee, the car rental companies did disclose the concession fee in their rental quotations.[44]
Finally, in Matter of Filderman Corp.,[45] and Matter of Century Travel Services, Inc., et al.,[46] the FTC concluded, respectively, that it was misleading not to disclose a mandatory delivery charge for large appliances and to advertise a tour price as "all-inclusive" when it did not include taxes. But as we have already observed in this case, there was disclosure of the concession fee and consumers do not allege that the car rental companies stated that their quoted car rental rates were "all inclusive" without including the concession fee.
The consumers next contend that the manner in which the car rental companies disclosed the concession fees is deceptive because it creates the misleading impression that the fees are taxes. To support this contention, they point to their affidavits and to the car rental companies' training manuals for phone reservation agents.
We conclude that the training manuals' characterization of the concession fee is irrelevant. There is no evidence that the consumers saw the manuals. We also conclude that the consumers' reliance on their affidavits in which they state that they believed the concession fee was a tax is misplaced because it contradicts their prior deposition testimony. "When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."[47]
Here, Kiel and Robinson both admitted in their depositions that National never told them the 10 percent concession fee was a tax imposed by government. And Trupin stated in her deposition that she knew that she was being charged a "CONRCFEE of $15.20." Moreover, each of the rental contracts the consumers signed clearly itemized the fee as either a "CONCESSION RECOVERY FEE 10%" or a "CONRCFEE" with an accompanying explanation that "`CONRCFEE' is the 10.00% concession recoupment fee.'" These disclosures reasonably apprised them that the fee is a recoupment or recovery by the car rental companies of a part of its overhead costs of doing business at the airport.[48] Thus, the consumers' affidavits, contradicts, without explanation, their prior deposition testimony. As such, the consumers have failed to establish a genuine issue of material fact on the issue of whether the car rental companies misrepresented the concession fee as a tax.
The consumers point to Trupin's receipt as the "most flagrant example" of deceptively characterizing the fee as a tax. The bottom of the receipt states "AIRPORT IMPOSED TAX/FEE IS 10.00%." But the itemized receipt itself lists a "CONRCFEE" of $15.20. That same "CONRCFEE" of $15.20 appears in Trupin's rental contract, which explains the "CONRCFEE" as the "10.00% concession recoupment fee." Thus, Trupin cannot claim that Alamo mislead her as to the nature of the fee.
*828 Finally, the consumers point to a report by the National Association of Attorneys General (NAAG) to support their claim that the car rental companies' conduct at issue is deceptive. The NAAG report was properly excluded from consideration by the trial court as inadmissible hearsay.[49] Moreover, even if it were admissible, it does not have the force of law, as indicated by its stated scope:
It is important to once again note that these Guidelines do NOT create any new laws or regulations regarding the advertising practices or other business practices of the car rental industry.[50]
Finally, even if the report was the equivalent of a formal opinion by the Attorney General of Washington that is entitled to great weight, we would not be bound by such an interpretation of consumer protection law.[51]
Because we conclude, as a matter of law, that the car rental companies' practices here are not unfair or deceptive, we need not decide whether the voluntary payment doctrine barred the consumers' claims here.

Summary
To summarize, the practices at issue here are not exempt from the CPA. On this record, consumers failed to carry their burden at summary judgment to show the existence of a genuine issue of material fact as to whether unbundling is an unfair or deceptive act and that a causal relationship exists between that act and their claimed injury.
We affirm the order summarily dismissing the claims.
COLEMAN, J., and APPELWICK, J., concur.
NOTES
[1] Clerk's Papers at 213, 332, 751 (italics ours).
[2] RAP 10.6(b).
[3] RCW 19.86.170 states that:

Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States[.]
[4] CR 56(c).
[5] Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994).
[6] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[7] Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989).
[8] Young, 112 Wash.2d at 225, 770 P.2d 182.
[9] Young, 112 Wash.2d at 225, 770 P.2d 182 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[10] RCW 19.86.170 (italics ours).
[11] Vogt v. Seattle-First National Bank, 117 Wash.2d 541, 552, 817 P.2d 1364 (1991) (construing the scope of the exemptions under the CPA).
[12] Comment, The Scope of the Washington Consumer Protection ActScope of the Regulated Industries Exemption Under the Washington Consumer Protection Act, 10 Gonz. L.Rev. 415, 426-28, 432 (1975); see Vogt, 117 Wash.2d at 551, 817 P.2d 1364.
[13] King Cty. Water Dist. v. Port of Seattle, 63 Wash.App. 777, 782, 822 P.2d 331, review denied, 119 Wash.2d 1002, 832 P.2d 487 (1992).
[14] King Cty. Water Dist., 63 Wash.App. at 782, 822 P.2d 331.
[15] We express no opinion on the Port of Seattle's power, by contract or otherwise, to affect the terms and conditions by which those who lease Port facilities deal with members of the public.
[16] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 780, 719 P.2d 531 (1986); see also Henery v. Robinson, 67 Wash.App. 277, 289, 834 P.2d 1091 (1992), review denied, 120 Wash.2d 1024, 844 P.2d 1018 (1993).
[17] Pickett v. Holland America Line-Westours, Inc. 101 Wash.App. 901, 916, 6 P.3d 63 (2000) (citing Hangman Ridge, 105 Wash.2d at 793, 719 P.2d 531), review granted, 143 Wash.2d 1001, 20 P.3d 944 (2001).
[18] Pickett, 101 Wash.App. at 916, 6 P.3d 63.
[19] Pickett, 101 Wash.App. at 916, 6 P.3d 63.
[20] Pickett, 101 Wash.App. at 916, 6 P.3d 63.
[21] Hiner v. Bridgestone/Firestone, Inc., 91 Wash. App. 722, 729, 959 P.2d 1158 (1998), rev'd on other grounds by, 138 Wash.2d 248, 978 P.2d 505 (1999).
[22] See Nuttall v. Dowell, 31 Wash.App. 98, 110-11, 639 P.2d 832, review denied, 97 Wash.2d 1015 (1982) (causal link between deceptive act and resulting injury element need not be shown where the Attorney General sues to enjoin or deter CPA misconduct on behalf of consumers; such a link is only necessary in private actions where plaintiff seeks recovery of damages).
[23] Leingang v. Pierce County Med. Bureau, Inc., 131 Wash.2d 133, 150, 930 P.2d 288 (1997); Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wash.App. 553, 560, 825 P.2d 714, review denied, 120 Wash.2d 1002, 838 P.2d 1143 (1992); Grayson v. Nordic Constr. Co., Inc., 22 Wash.App. 143, 148-49, 589 P.2d 283 (1978) (whether advertisement constitutes an unfair or deceptive trade practice is a question of law), overruled on other grounds, 92 Wash.2d 548, 599 P.2d 1271 (1979).
[24] RCW 19.86.920 states in relevant part that:

The legislature hereby declares that the purpose of [the CPA] is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters[.]
[25] The trial court's memorandum decision states in relevant part that:

The fundamental issue in this case is whether the practice of billing separately for a daily rental rate and "surcharges or fees," such as airport concession fees, should be prohibited per se ... [p]laintiffs case as pled must be dismissed. In so holding, this Court limits its ruling to the sole cause of action pled in the Amended Complaint. The practice of unbundling the airport concession recoupment fee from the advertised practice is not violative of RCW 19.86.090 as a matter of law. The specific requirements of sufficient disclosure are not before the Court[.]
Clerk's Papers at 1612.
[26] The Court's supplemental letter stated:

The Court has now received and reviewed the parties' proposed Orders on Summary Judgment, and related correspondence and pleadings, and other pertinent pleadings, and based thereon, concludes that the statement in the Court's Memorandum Decision that the "... specific requirements of sufficient disclosure are not before the Court" was unduly restrictive ... a further review leads to the conclusion that the issue of the specific manner of disclosure was both sufficiently pled and briefed.
Clerk's Papers at 1594 (italics ours).
[27] Clerk's Papers at 1643-44 (italics ours).
[28] Brief of Appellants at 30.
[29] See Wine v. Theodoratus, 19 Wash.App. 700, 706, 577 P.2d 612 (1978) (quoting Fisher v. World-Wide Trophy Outfitters, 15 Wash.App. 742, 747, 551 P.2d 1398 (1976)).
[30] 91 Wash.App. 722, 730, 959 P.2d 1158 (1998).
[31] F.T.C. v. Gill, 71 F.Supp.2d 1030, 1046 (C.D.Cal.1999); Resort Car Rental System, Inc. v. F.T.C., 518 F.2d 962, 964 (9th Cir.1975), cert. denied sub nom., MacKenzie v. U.S., 423 U.S. 827, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).
[32] Clerk's Papers at 324-26, 878-80, 911-12.
[33] Clerk's Papers at 934.
[34] See Gray v. Town of Darien, 927 F.2d 69, 74 (2d Cir.), cert. denied, 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991) (nonmoving party cannot defeat a summary judgment motion by wishfully thinking that proof might somehow appear to give life to a moribund claim); 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure § 2727, at 504-08 (1998) (the nonmovant is not entitled to a trial on the basis of a hope that he can produce some evidence at that time).
[35] The relevant portions of Kiel's deposition testimony are as follows:

[Counsel:] ... I take it, then ... that when you rented your car at Sea-Tac airport in April of 98, National disclosed to you the fact that there was a ten percent airport concession or recoupment fee, correct?
[Kiel:] Specifically[,] I do not recall if they told me at that time or not.
[Counsel:] Do you have any reason to believe they did not tell you that?
[Kiel:] Either way I don't have any reason to believe they did or didn't. I don't recall.
[Counsel:] They may have told you and you just don't recall it, that's a possibility, correct?
[Kiel:] Uh-huh.
[Counsel:] Is that a yes?
[Kiel:] Yes.
Clerk's Papers at 1166 (italics ours).
[Counsel:] Can you tell me everything you were told by the Avis reservationist when you called the 800 number[?]
[Kiel:] No, I couldn't. I couldn't possibly recall all that.
[Counsel:] Do you recall anything about the conversation?
[Kiel:] No, I really don't remember even making this reservation.
[Counsel:] So it's possible, is it not, that the Avis representative told you about the 10 percent concession recovery fee?
[Kiel:] It could have been, but I don't recall one way or another.
Clerk's Papers at 415-16 (italics ours).
[36] The relevant portion of Robinson's testimony is as follows:

[Counsel:] As best as you can, tell me as much as you can what you said to the ... 800 operator, nowand what they said back to you. Just relate the conversation, please.
[Robinson:] Well, to the best of my recollection, I asked to rent a car from Seattle airport for when I arrived in Seattle. And I asked for a car, I believe, one size above from the smallest car, and what the price would be. And as I recall, she quoted me a price of $47.
[Counsel:] And did the person on the phone tell you what the price included?
[Robinson:] I don't recall.
...
[Counsel:] Do you recall one way or the other whether the National agent in fact told you about the ten percent airport concession fee that you would be charged?
[Robinson;] No, I don't believe that was told to me.
[Counsel:] Are you certain of that?
[Robinson:] No.
[Counsel:] So it could be that you just don't remember, is that right?
[Robinson:] Possible.
Clerk's Papers at 683, 690.
[37] Cf. Kilgore, et al. v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 299-300 (6th Cir. 1998) (in an action by restaurant employee against restaurant for its alleged failure to inform him of its policy to treat tips as satisfying part of its minimum wage obligation as required under the Fair Labor Standards Act, no genuine issue of fact exists as to whether restaurant informed employee of such policy where restaurant submitted affidavits showing that it disclosed its policy in writing and employee only submitted affidavit stating that he does not recall being informed of the policy).
[38] Clerk's Papers at 1251.
[39] Pickett, 101 Wash.App. at 916, 6 P.3d 63.
[40] Resort Car Rental, 518 F.2d at 964 (the 9th circuit court did not analyze the FTC's decision other than to state that there was substantial evidence to support the decision).
[41] 861 F.2d 1020 (7th Cir.1988).
[42] World Travel Vacation Brokers, 861 F.2d at 1029-30.
[43] 75 F.T.C. 139 (1969).
[44] For example, one of Alamo's advertisement reads "$29 a dayis this a fun country, or what?" Below that heading, the advertisement states "[c]oncession recoupment fees may add up to 10.5% to the rental rate at some on-airport locations." Clerk's Papers at 871.
[45] 64 F.T.C. 427 (1964).
[46] 43 F.T.C. 212 (1946).
[47] Marshall v. Bally's Pacwest, Inc., 94 Wash. App. 372, 379, 972 P.2d 475 (1999).
[48] Cf. Capital Leasing of Ohio, Inc. v. Columbus Municipal Airport Authority, 13 F.Supp.2d 640, 665 (S.D.Ohio 1998) (concluding that "access fee" is a misleading characterization because it does not in any way identify surcharge passed on to rental car consumers as being recoupment by Budget of a part of its overhead costs of doing business at the airport and not a charge imposed directly on the airport customer by the Port Authority.)
[49] The trial court stated that "the [NAAG] Report itself is hearsay. It is an out of court statement offered to prove the truth of the statements therein, that is, that the described conduct is unfair and deceptive." Clerk's Papers at 1610.
[50] Clerk's Papers at 1138.
[51] Seattle Bldg. and Const. Trades Council v. Apprenticeship and Training Council, 129 Wash.2d 787, 803, 920 P.2d 581 (1996), cert. denied, 520 U.S. 1210, 117 S.Ct. 1693, 137 L.Ed.2d 820 (1997) (generally, opinions of the Attorney General in construing statutes are entitled to great weight, though they are not binding).