## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KEY K. KIM, an individual,<br><br>Appellant,<br><br>v.<br><br>FAY SERVICING, a Delaware Corporation,<br><br>Respondent,<br><br>FLAGSTAR BANK, FSB, a Michigan Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; and IH3 PROPERTY WASHINGTON LP; a Delaware Corporation,<br><br>Defendants. | No. 46906-5-II<br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Key Kim appeals the trial court's order granting summary judgment in favor of Fay Servicing, dismissing Kim's Consumer Protection Act (CPA) claim.[1] Kim argues that he created a genuine dispute of material fact; however, because Kim failed to establish a genuine dispute of material fact as to each element of his CPA claim, the trial court did not err by granting Fay Servicing's summary judgment motion. We affirm.

---

[1] Originally Kim filed multiple claims against multiple defendants. This claim is the only one remaining.

FACTS

In January 2006, Kim purchased property in Lakewood.[2] He borrowed money from Flagstar Bank and took out a mortgage on the house. Kim stopped paying the mortgage for six months between 2012 and 2013. In April 2013, Flagstar appointed Northwest Trustee Services (NWTS) as successor trustee. In August 2013, NWTS transferred servicing of Kim's loan to Fay Servicing. Fay Servicing contacted Kim to notify him of the change and to attempt to avoid foreclosure on his house.

Between August and October 2013, Kim and Fay Servicing spoke on the phone several times about Kim's mortgage. On September 11, Kim submitted a hardship letter to Fay Servicing with a bank statement showing a $1,076.99 balance. In the letter, Kim wrote he was delinquent due to a lack of income from his business and he wanted Fay Servicing to work with him to modify his loan. The bank statement and letter did not show proof of income. In August 2013, Kim received a check for $300,000 from the sale of his stake in his ex-wife's business. According to Kim, he told Fay Servicing about the $300,000 and Fay Servicing suggested he use the money to repay the loan. Kim told Fay Servicing that he intended to use the money to invest in a small business so he could have regular income.

Kim's property was sold at a trustee's sale. Subsequently, on November 21, 2013, Kim filed the complaint underlying this appeal.[3] On July 17, 2014, prior to filing its motion for summary judgment, Fay Servicing deposed Kim. During the deposition Kim stated, "[Michael

---

[2] Fay Servicing cites to the complaint in both its motion for summary judgment and its appellate brief. However, Fay Servicing did not provided the complaint or the original loan documents for our review.

[3] Originally, the suit included five defendants: Flagstar Bank, Mortgage Electronic Registration Systems, NWTS, IH3, and Fay Servicing. The trial court either granted summary judgment or dismissed the claims against all of the defendants except Fay Servicing.

Crawley][4] said he will do the modification. I bought the house when the interest rate was the highest, so that he said he will adjust the rate and told me to wait. I waited for his phone call. He didn't call me back, so I called him back." Clerk's Papers (CP) at 40. According to Kim, "Mike okayed it," but then "there [was] a lot of expert terminology that came out like terms like you used now, so I couldn't understand" and Crawley said "he [would] get an interpreter." CP at 41. Fay Servicing did not call him back.

Kim also explained, "I was told that I [would] be qualified for modification if I d[idn't] pay for six months, so I did that." CP at 46. He credited this advice to "[p]eople, friends around and people I know." CP at 47. He acknowledged that no one at Fay Servicing gave him this advice. He also stated,

> In case it wasn't successful, I have to pay the mortgage, so for every month I saved the mortgage amount so I could pay. So if you look at my credit report, it's perfect, I was never late in paying any payments including car payments, but just with this loan itself, it was intentional.

CP at 47. Kim explained that he believed he was getting a modification "[b]ecause Mike was very positive about it and he spoke positively. So I told [my attorney] that according to Mike, I think modification is possible. I don't know how much it will be modified, but I believe it would be modified." CP at 49.

Additionally, the following exchange occurred in reference to the letter Kim wrote to Fay Servicing asking for a modification:

> [Attorney]: So at the time that you are writing this letter in September 2013, you have over $300,000 in cash, but you are still writing a hardship letter; is that correct?

---

[4] An account manager for Fay Servicing.

[Kim]: Well, doesn't everybody?  I mean, if you have millions of dollars, like you want to modify the loan, you don't say I have a lot of money; please modify my loan for me.

CP at 51.

Fay Servicing filed a motion for summary judgement, arguing that Kim had no competent evidence to support three out of the five elements required to establish a prima facie CPA case.  In his response, Kim argued that three genuine disputes of material fact existed: whether Fay Servicing offered a loan modification, whether Kim was misled into believing the trustee's sale "would not be held on November 1," and whether Kim was injured because he was misled.  CP at 72.

In support of its motion for summary judgment, Fay Servicing filed declarations by two account managers: Michael Crawley and Michael Kerber.[5]  Both Crawley and Kerber stated that they attempted to obtain Kim's financial information to look into a loan modification but were unsuccessful.

Kim answered an interrogatory question, "Fay Servicing engaged in discussions that led me to believe that my mortgage would be modified and it is presumed that there are other Washington residents whose mortgages are being serviced by Fay Servicing."  CP at 35.  Michael Crawley stated, "[A]t no point during any of our conversations did I ever advise [Kim] that he was being offered a loan modification."  CP at 64.  Michael Kerber similarly stated,

> The last time I spoke with [Kim] was on October 17, 2013, and at no point during that or any of our conversations did I ever advise [him] that he was being offered a loan modification. To the contrary, I attempted to emphasize to [Kim] that if he did not provide us with financial information showing that he would be able to make his mortgage payments in the future, Fay Servicing would not be able to provide him with a loan modification.  [Kim] told me that he was unable to cure his

---

[5] Kim opined in his declaration that he spoke on the phone with Michael Crawley on October 17, 2013.  However, based on the declarations, he seems to have spoken with Michael Kerber.

default and that he wanted to only pay $1,500.00 per month for his mortgage. I explained to [Kim] that in my experience, that was not realistic.

CP at 69.

Michael Kerber also declared that the language barrier between himself and Kim, a Korean speaker, made further discussions "unproductive" and he told Kim he wanted to "see if [he] could find an interpreter to assist, and that if [he] could find one, [he] would call [Kim] back." CP at 70. Kim stated that he "was under the impression that the trustee's sale would be postponed again, pending finalization of the modification" and that he "would otherwise have sought an injunction to halt the sale of the house or sought other relief to keep [his] house." CP at 78.

On October 17, 2014, the trial court heard argument on Fay Servicing's summary judgement motion. The trial court granted the motion. Kim appeals the order granting summary judgment.

ANALYSIS

Kim argues that the trial court erred by granting summary judgment and dismissing his CPA claim. We disagree.

I.    STANDARD OF REVIEW

We review an order for summary judgment de novo, engaging in the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012).

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment–Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.,* 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute. *Atherton*, 115 Wn.2d at 516.

The response, by affidavits or as otherwise provided under CR 56, must set forth specific facts that reveal a genuine issue for trial. *Grimwood v. Univ. of Puget Sound*, Inc., 110 Wn.2d 355, 359, 753 P.2d 517 (1988), *see also* CR 56. "[C]onclusory statements of fact will not suffice." *Grimwood*, 110 Wn.2d at 360. If the nonmoving party fails to do so, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Granville Condo. Homeowners Ass'n v. Kuehner*, 177 Wn. App. 543, 551, 312 P.3d 702 (2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

II.    CPA CLAIM

Kim argues that he established a genuine dispute of material fact as to his CPA claim and the trial court erred by granting summary judgment. We disagree.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To establish a private CPA action, a plaintiff must prove five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting public interest; (4) injuring the plaintiff in his or her business

or property; (5) and causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). If any element of the prima facie case is not satisfied, a plaintiff cannot prevail. *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 114, 22 P.3d 818 (2001). The CPA should be liberally construed. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 602, 200 P.3d 695 (2009).

Fay Servicing contends that Kim lacked competent evidence to support the first, third, and fifth elements. Because the failure of one element is fatal to a claim, *see Robinson*, 106 Wn. App. at 114, and we conclude that Kim failed to establish the first element, we need not continue our analysis further.

Kim argues that Fay Servicing engaged in unfair or deceptive tactics. Where there is no dispute about what the parties did, whether conduct constitutes an unfair or deceptive trade practice under the CPA is an issue of law that we review de novo. *Robinson*, 106 Wn. App. at 114. "'A plaintiff need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public.'" *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 835, 355 P.3d 1100 (2015) (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47, 204 P.3d 885 (2009)). The element may also be established by showing a per se unfair trade practice. *Hangman Ridge*, 105 Wn.2d at 785-86.

"A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman Ridge*, 105 Wn.2d at 786. Kim makes no such argument here; therefore, we consider whether Kim showed that Fay Servicing's conduct had the capacity to deceive a substantial portion of the public.

Kim contends several material facts are in dispute, including whether Fay Servicing offered him a modification and whether Fay Servicing misled him into believing the trustee's sale would not go forward. However, the following facts are undisputed. Kim was intentionally delinquent on his loan. Fay Servicing contacted him several times to discuss his delinquency and during those conversations, addressed loan modification. An agent of Fay Servicing told Kim that he would try to get an interpreter. But, at that time, Fay Servicing and Kim did not formalize a loan modification and Kim did not take action to enjoin the trustee's sale. Based on Kim's own deposition and declaration, along with the declarations of Crawley and Kerber, we conclude there is no genuine dispute of material fact as to whether Fay Servicing and Kim formalized a modification. It is clear they did not.

Despite these undisputed facts, Kim also appears to argue he was offered a modification. The agent from Fay Servicing stated in his declaration, "[A]t no point during any of our conversations did I ever advise [Kim] that he was being offered a loan modification." CP at 64. During his deposition, Kim stated, "Mike okayed [the modification]," but then "there [was] a lot of expert terminology that came out like terms like you used now, so I couldn't understand." CP at 41. Kim stated that at that point, the agent from Fay Servicing said he would get an interpreter and call Kim back. Kim went on to say that he believed he was getting a modification "[b]ecause Mike was very positive about it and he spoke positively. So I told [my attorney] that according to Mike, I think modification is possible. I don't know how much it will be modified, but I believe it would be modified." CP at 49.

While the offer of a modification under some circumstance may arguably have the capacity to deceive by inducing inaction, Kim fails to demonstrate that Fay Servicing offered a loan modification, or that discussing a modification in these circumstances had the capacity to deceive.

Additionally, Kim contends a genuine dispute of material fact existed as to whether or not Fay Servicing intentionally misled him to ensure his own inaction relating to the trustee sale. Kim argues that Fay Servicing declined to communicate with him through his lawyer, stating, "Fay insisted on talking with [me] instead of [my] attorney." Br. of Appellant at 6. Fay Servicing acknowledges that it was contacted by Kim's attorney. However, Kim fails to demonstrate that Fay Servicing's actions had the capacity to deceive a substantial portion of the public beyond his own conclusory statements and opinions. *See Grimwood*, 110 Wn.2d at 360 (finding deficient plaintiff's affidavit in opposition that only presented his conclusions and opinions). Kim knew he had not paid on the loan for six months, knew he had money to pay, and he had a lawyer to consult with but failed to take action to prevent the sale. Kim also stipulated that Fay Servicing properly provided him with notice of the trustee sale.

Finally, Kim asserts that Fay Servicing told him it would call back with an interpreter and that he believed this was to go over a modification. He argues that whether or not his belief was reasonable is a genuine issue of material fact. His belief is not material as to whether or not Fay Servicing performed unfair business practices. The material issue is whether the conduct had the capacity to deceive a substantial portion of the public, not whether it actually deceived Kim personally. *See Trujillo*, 183 Wn.2d at 835. Kim has failed to demonstrate how this act, even if believed, would constitute an unfair or deceptive practice. He had knowledge of the trustee sale. We conclude that Kim did not create a genuine dispute of material fact as to the first element of his CPA claim and therefore, summary judgment was proper. *See Robinson*, 106 Wn. App. at 114.

We affirm the trial court's grant of summary judgment in favor of Fay Servicing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, P.J.

_____
Sutton, J.