[No. 16767-4-III. Division Three. April 6, 1999.]

JUANA VASQUEZ, ET AL., *Plaintiffs*, PAUL GLASSEN, *Appellant*, v. THE STATE OF WASHINGTON, ET AL., *Respondents*.

---

978

*Steven C. Lacy*, of *Lacy & Kane, P.S.*, for appellant.
*Christine O. Gregoire, Attorney General*, and *Brian L. Ernst, Assistant*, for respondents.

KATO, J. — Paul Glassen appeals the summary dismissal of claims arising from his termination as an employee of the Department of Social and Health Services. He contends the superior court erred in concluding he failed to exhaust his administrative remedy and in concluding there was insufficient proof to go forward with his claims for retaliatory discharge and tortious interference with a business relationship. We affirm.

Mr. Glassen was fired as a social worker with the Department's Division of Children and Family Services in Wenatchee on March 7, 1995. The dismissal letter stated:

> Specifically on April 27, 1994, May 6, 1994, and May 21, 1994, you failed to report information which was given to you relative to abuse and neglect on Dean H., Patricia H., and Martin H. Both the foster mother and the children's therapist reported to you, on the above dates, disclosures made by the children related to sexual abuse. You recorded in the case record the information you received from the therapist and foster mother, but failed to report the information to Child Protective Services or the Wenatchee Police Department, which is required in RCW 26.44.030(4).

Mr. Glassen appealed the dismissal to the Personnel Appeals Board (PAB), but voluntarily dismissed that appeal in June 1995.

In August 1995, Mr. Glassen and two others filed this action, naming as defendants the Department and several of its employees as well as Ricardo Robert Perez, a Wenatchee police officer. The complaint's first claim was by Juana Vasquez, who alleged she had won a judgment against the State for employment discrimination in July 1994. She alleged in this complaint that she had been subjected to further discrimination as a result of the earlier lawsuit.

The complaint's second claim was for retaliation in violation of RCW 49.60.210. Among the allegations[1] were the following:

3.H The Plaintiff Paul Glassen, despite being verbally requested by State agents and employees to give testimony against Juana Vasquez during her discrimination trial in the summer of 1994, refused to do so.

3.I Beginning in approximately August of 1994 agents of the State, including supervisors and directors in direct line of supervision over [Mr. Glassen], . . . engaged in intimidatory, retaliatory, and discriminatory conduct against Mr. Glassen for assisting in civil rights compliance. Said retaliation is alleged to have been in response to Mr. Glassen's work as the assigned social worker on a case in the Wenatchee office which involved competing claims for custody of a Mexican National child by his Mexican natural father and by foster parents employed by D.S.H.S. In addition, retaliation is alleged for Plaintiff Glassen's association with and ostensible support of [Mr. Glassen's] supervisor, Juana Vasquez, who successfully pursued to judgment a claim of race discrimination against D.S.H.S. Mr. Glassen was repeatedly and regularly subjected to differential and retaliatory treatment by supervisory personnel, including the exclusion of him from his work place and confinement to his home, elimination of all or nearly all of his authority and function as a social worker and other demeaning requirements and responsibilities. Furthermore, agents of the State directed,

---

[1]Ms. Vasquez and another State employee, Juan Garcia, also alleged retaliation. Their claims are not at issue in this appeal.

colluded with, participated with, encouraged and solicited police and prosecuting authorities in Chelan County Washington for the purpose of having Mr. Glassen falsely accused of criminal conduct. In addition, said agents ultimately discharged Mr. Glassen in furtherance of the scheme of conduct alleged above, after subjecting him to a frivolous, unwarranted and wasteful investigation, including attempted interrogation by agents of D.S.H.S. Office of Special Investigation, the scope of which indicates a general intent and motive to discover and uncover whatever information could be obtained to discredit Mr. Glassen or be utilized as a basis for discipline of him.

The complaint's third claim, also by all three plaintiffs, alleged the defendants had tortiously interfered with the plaintiffs' employment relationships with the State. Finally, the fourth claim, by Mr. Glassen alone, alleged Detective Perez had abused the criminal complaint process in retaliation against Mr. Glassen "for having participated in the revelation of the fact that a child, from whom Defendant Perez had solicited and obtained a false disclosure of sexual abuse, had recanted her allegations, naming pressure from Defendant Perez as the reason for having made such false allegations."

On the defendants' motion for summary judgment, the superior court dismissed all the claims except Ms. Vasquez's retaliation claim.[2] In a letter opinion, the court held the connection between Mr. Glassen's allegations and his dismissal was "entirely speculative." The court also concluded Mr. Glassen's claims were barred because he failed to exhaust his administrative remedy. As for the tortious interference claim, the court held Mr. Glassen had failed to establish "material factual disputes" on the issues of whether the individual defendants intentionally inter-

---

[2]The superior court's order granting partial summary judgment does not reveal the disposition of Mr. Glassen's claim against Detective Perez for abuse of process. A stipulated amended judgment stated that, while the order granting partial summary judgment did not dispose of all of the claims, all of *Mr. Glassen's* claims had been dismissed. In this appeal, Mr. Glassen does not challenge the dismissal of his claim against Detective Perez. The remaining claims at issue here, then, are for retaliation and tortious interference with a business relationship.

fered with his employment and whether they had used improper means or had an improper purpose.

We first address the superior court's conclusion the claims were barred because Mr. Glassen failed to exhaust his administrative remedy. Division Two of this court recently addressed this question in a different context. In *Milligan v. Thompson*, 90 Wn. App. 586, 953 P.2d 112 (1998), a State employee argued the statute of limitations on his discrimination and related claims tolled during the pendency of the appeal of his dismissal to the PAB. The court disagreed:

> Generally, a state civil service employee subject to an adverse employment action must present his or her claim to the PAB for resolution before bringing an action to court. RCW 41.06.170(2); *Kreager v. Washington State Univ.*, 76 Wn. App. 661, 664, 886 P.2d 1136 (1994); *Kringel v. Department of Soc. & Health Servs.*, 47 Wn. App. 51, 53, 733 P.2d 592[, *review denied*, 108 Wn.2d 1034] (1987). Exhaustion is required when: (1) a claim is cognizable in the first instance by an agency alone; (2) the agency has clearly established mechanisms for the resolution of complaints by aggrieved parties; and (3) the administrative remedies can provide the relief sought. *South Hollywood Hills Citizens Ass'n v. King County*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984). The exhaustion doctrine furthers the policy of giving deference to an administrative body possessing expertise in areas outside the conventional experience of judges. *Id.* at 73.
>
> But . . . the Washington Legislature intended that statutory remedies protecting civil rights and preventing discrimination be independent of state administrative remedies and collective bargaining rights. *See . . . Morales v. Westinghouse Hanford Co.*, 73 Wn. App. 367, 371, 869 P.2d 120[, *review denied*, 124 Wn.2d 1019] (1994). Thus, [the plaintiff] was not required to exhaust his administrative remedies before bringing a cause of action under Washington's Law Against Discrimination[.] *Bruce v. Northwest Metal Prods. Co.*, 79 Wn. App. 505, 513, 903 P.2d 506 (1995), *review denied*, 129 Wn.2d 1014 (1996); *Morales*, 73 Wn. App. at 371 . . . .
>
> Nor was [the plaintiff] required to exhaust his administra-

tive remedies before bringing his tort actions because there is no showing that those claims were initially cognizable by the PAB alone, were within its special expertise, or that the PAB could provide the relief he sought. *See South Hollywood Hills*, 101 Wn.2d at 73; *see also* WAC 358-30-050 and WAC 358-30--180. Because [the plaintiff] did not need to exhaust administrative remedies, the statute of limitations was not tolled during the time of his PAB appeal.

*Milligan*, 90 Wn. App. at 596-97 (footnote omitted); *see Riccobono v. Pierce County*, 92 Wn. App. 254, 966 P.2d 327 (1998).

*Milligan* is on point. Mr. Glassen was not required to seek redress for his alleged discrimination damages with the PAB before filing this action. Also, because the PAB could not provide the relief he sought against the individual defendants for intentional interference with a business relationship, he was not required to pursue those remedies with the board either.

The Department relies heavily on *Reninger v. Department of Corrections*, 79 Wn. App. 623, 901 P.2d 325 (1995), *aff'd*, 134 Wn.2d 437, 951 P.2d 782 (1998), which does not support its argument. In that case, the plaintiff's claims were not discrimination claims, but instead were "simply employee relations disputes dressed up as torts." *Reninger,* 79 Wn. App. at 632. The claims thus were precisely the types of claims that the civil service system's "elaborate system of rules, procedures, and remedies" were created to resolve. *Id.* at 631.

This case, by contrast, involves discrimination allegations and related claims that the civil service system was not created to resolve. The superior court erred in holding Mr. Glassen's claims were procedurally barred.

■ Alternatively, the superior court concluded Mr. Glassen presented insufficient proof to support his claim for retaliatory discharge. The inquiry on review of an order granting summary judgment is the same as the superior court's. *Kahn v. Salerno*, 90 Wn. App. 110, 117, 951 P.2d 321, *review denied*, 136 Wn.2d 1016 (1998). Summary judg-

ment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The burden is on the moving party to establish its right to judgment as a matter of law, and facts and reasonable inferences from the facts are considered in favor of the nonmoving party. *Kahn,* 90 Wn. App. at 117.

> The party moving for summary judgment has the initial burden of showing there is no dispute as to any issue of material fact; but once that burden is met, the burden shifts to the nonmoving party to establish the existence of an element essential to its case. *Hiatt v. Walker Chevrolet Co.,* 120 Wn.2d 57, 66, 837 P.2d 618 (1992). "In order for a plaintiff alleging discrimination in the workplace to overcome a motion for summary judgment, the worker must do more than express an opinion or make conclusory statements." *Marquis v. City of Spokane,* 130 Wn.2d 97, 105, 922 P.2d 43 (1996) (citing *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988)). To defeat summary judgment, the employee must establish specific and material facts to support each element of his or her prima facie case. *Id.* (citing *Hiatt,* 120 Wn.2d at 66-67).

*Kahn*, 90 Wn. App. at 117.

■ ■ It is unlawful in Washington for an employer to discriminate against a person because that person opposed any practices forbidden by the Law Against Discrimination. RCW 49.60.210(1). To establish a prima facie[3] case for retaliatory discharge, a plaintiff must show that he engaged in statutorily protected activity, that he was discharged, and that retaliation was a substantial factor behind the discharge. *Kahn,* 90 Wn. App. at 128-29. Retaliatory motivation need not be the principal reason for the dis-

---

[3]If a plaintiff makes out a prima facie case for discrimination, the burden of production then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for termination." *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 364, 753 P.2d 517 (1988). If the employer meets this burden, the plaintiff then must meet his ultimate burden of persuasion to show that the employer's proffered reason is a mere pretext. *Id.* The issue here is whether Mr. Glassen satisfied his initial burden to make out a prima facie case for retaliatory discharge. The shifting burden of production thus has no bearing on the analysis.

charge. *Id.* at 129. However, "opposition to an employer's possible discrimination does not enjoy absolute immunity; an employee may still be terminated for proper cause even when engaged in protected activity." *Kahn,* 90 Wn. App. at 129 (citing *Coville v. Cobarc Servs., Inc.,* 73 Wn. App. 433, 439, 869 P.2d 1103 (1994)).

■ ■ Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose. *Kahn,* 90 Wn. App. at 130 (citing *Wilmot v. Kaiser Aluminum & Chem. Corp.,* 118 Wn.2d 46, 69, 821 P.2d 18 (1991)). Among the factors suggesting retaliatory motivation is proximity in time between the discharge and the protected activity; another factor is satisfactory work performance and evaluations. *Kahn,* 90 Wn. App. at 130-31. "Moreover, if the employee establishes that he or she participated in an opposition activity, the employer knew of the opposition activity, and he or she was discharged, then a rebuttable presumption is created in favor of the employee that precludes us from dismissing the employee's case." *Id.* at 131 (citing *Wilmot,* 118 Wn.2d at 69; *Graves v. Department of Game,* 76 Wn. App. 705, 712, 887 P.2d 424 (1994)).

Mr. Glassen alleges he was discharged in retaliation for his activities in three separate incidents:

■ Mr. Glassen first alleges he was dismissed in retaliation for his refusal to testify in favor of the State in Ms. Vasquez's first discrimination case. He stated in an affidavit:

> I had been aware for a few years of ongoing conflict between Juana Vasquez and many other workers in the office, primarily those in the CPS unit, including Pat Boggess, Dean Reiman, and Tim Abbey. The atmosphere in the office had become very strained during the course of a lawsuit which Juana had pursued based on race discrimination, especially in the last few months before, and during the trial which had occurred during mid summer, 1994. I had been asked by Tim Abbey, the CPS supervisor, to take the telephone in his office. On the other end of the line was an Assistant Attorney General who

questioned me relative to my willingness [to] participate as a witness for the State against Juana. After some discussion I made it clear that, if called as a witness, my testimony would be more favorable to her than to the State.

In a deposition, Mr. Glassen testified Ms. Vasquez never asked him to testify on her behalf and never discussed her lawsuit against the State. He believed his comment to the assistant attorney general must have been communicated to his superiors because he was not asked to testify in the Vasquez lawsuit.

Relying on *Kahn*, Mr. Glassen contends this evidence raises a rebuttable presumption that precludes summary judgment. The first step is to consider whether his comments to the assistant attorney general rise to the level of "opposition activity." If he had testified for Ms. Vasquez in the earlier lawsuit, or perhaps even if he had spoken out directly on her behalf, his conduct would have risen to the level of an activity protected by RCW 49.60.210(1). But even considering Mr. Glassen's evidence in its most favorable light, we cannot conclude he actively *opposed* the discriminatory practices against Ms. Vasquez. In fact, he testified he was "very appreciative" that Ms. Vasquez did not attempt to involve him in her lawsuit. Mr. Glassen did not testify for her, nor did he actively support her position. He has failed to show his comment to an assistant attorney general was "opposition activity" recognizable under RCW 49.60.210(1). The superior court properly concluded this alleged incident did not support Mr. Glassen's retaliation claim.

■ Mr. Glassen next alleges he was dismissed in retaliation for his refusal to assist foster parents in the so-called "Jessie" guardianship.[4] In October 1994, Mr. Glassen wrote a letter to the secretary of the Department detailing his involvement in the "highly contested . . . matter where the foster family fought to avoid giving up the child to his father, a deported Mexican national."

---

[4]This allegation apparently refers to the facts described in *In re Dependency of J.B.S.*, 123 Wn.2d 1, 863 P.2d 1344 (1993).

The letter stated Ms. Vasquez originally was in charge of the case, but he took it over in the fall of 1991. The letter continued:

Dean Reiman and Pat Boggess have always been outspoken critics of my own and Ms. Vasquez' handling of the case and in particular my compliance with the Policy on Working with Foreign Nationals. They have bragged about how great they think Jessie's foster family is—and, far from disciplining the foster family in her capacity as foster licensor, Ms. Boggess and her husband have aggravated the situation, exacerbating both Jessie's and the foster family's suffering, by encouraging them to appeal, to believe that they had every right to keep the child[,] and only the incompetence of Ms. Vasquez and myself and our misguided "Hispanic" sympathies were preventing them from doing so.

Mr. Glassen's affidavit in this case alleged:

In addition, I myself had incurred the ire of Carol Billesbach, the Area Manager, in connection with my refusal to follow her suggestion, which I considered to be inappropriate [and illegal], that I aid some foster parents in establishing a guardianship over the child of a Mexican national, a client of our office who was seeking to reunite with [h]is son and take him home to Mexico.

Mr. Glassen again contends his conduct was "opposition activity" that raises a rebuttable presumption of retaliation. He does not explain precisely how the Department's or his colleagues' practices violated the Law Against Discrimination, but his letter's reference to "misguided 'Hispanic' sympathies" suggests he believed the Department's practices discriminated against the child's father on the basis of his national origin. See RCW 49.60.030(1).

Beyond his bare allegation, however, there is no evidence in the record from which an inference can be made that the Department's or his colleagues' conduct in the "Jessie" case was unlawfully discriminatory. Indeed, the Department sought to change the placement of the child from his foster family to his father, who resided in Mexico. *In re*

*Dependency of J.B.S.*, 123 Wn.2d 1, 5, 863 P.2d 1344 (1993). Other than his conclusory belief and accusation, there is no factual basis for Mr. Glassen's contention that he engaged in "opposition activity" recognizable under RCW 49.60.210(1). The superior court properly concluded this alleged incident did not support Mr. Glassen's retaliation claim.

■ Mr. Glassen finally alleges he was dismissed in retaliation for his support of Robert Devereaux, a single foster parent who became a focus of Detective Perez's wide-ranging investigation of alleged sexual abuse of children in the Wenatchee area. According to Mr. Devereaux, the Department's caseworkers unfairly insisted that he obtain a live-in female housekeeper in his home. Mr. Devereaux apparently viewed this requirement as unlawful discrimination on the basis of his gender and marital status. Ms. Vasquez, who at the time was in charge of foster care licenses, apparently agreed and successfully urged Department officials to remove the requirement.

Mr. Devereaux eventually was arrested by Detective Perez and charged with several counts of child rape. One of the children who had accused Mr. Devereaux then recanted during an interview with Mr. Glassen. Mr. Glassen himself then became a focus of Detective Perez's investigation. In an affidavit, Mr. Glassen alleges he was arrested for witness tampering in August 1994. He responded with his own allegation that Detective Perez may have abused the child. Shortly after that, Mr. Glassen was reassigned to his residence, with no actual work responsibilities, and eventually was fired in March 1995. Mr. Glassen apparently was charged with obstructing an officer, but that charge was dismissed.

Mr. Glassen again contends this conduct was "opposition activity" that raises a rebuttable presumption of retaliation. Arguably, Mr. Devereaux's dispute with caseworkers over the housekeeper requirement raised an issue implicating the Law Against Discrimination. However, that requirement was dropped, and the dispute then focused on criminal allegations of sexual abuse by Mr. Devereaux. To the

extent Mr. Glassen's conduct may be viewed as supportive of Mr. Devereaux, the record does not support an inference his activities were directed to opposing discrimination under RCW 49.60. Mr. Glassen clearly believed Detective Perez's investigation was abusive and wrong, but there is no indication he opposed it on grounds of unlawful discrimination. Mr. Glassen's activities thus do not raise a presumption his discharge was retaliatory under RCW 49.60.210(1). The superior court properly concluded these alleged incidents did not support Mr. Glassen's retaliation claim.

Even when viewed in a light most favorable to Mr. Glassen, the record does not support his claim of retaliatory discharge. The court properly dismissed this claim. We finally must address Mr. Glassen's claim for tortious interference with a business relationship.

The five elements of the tort of interference with a business relationship are:

1. The existence of a valid contractual relationship or business expectancy;

2. That defendants had knowledge of that relationship;

3. An intentional interference inducing or causing a breach or termination of the relationship or expectancy;

4. That defendants interfered for an improper purpose or used improper means; and

5. Resultant damages.

*Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 137, 839 P.2d 314 (1992).

A plaintiff must show that the interferor was an intermeddling third party; a party to the relationship cannot be held liable for tortious interference. *Houser v. City of Redmond*, 91 Wn.2d 36, 39, 586 P.2d 482 (1978); *Calbom v. Knudtzon*, 65 Wn.2d 157, 396 P.2d 148 (1964). The Department therefore may not be held vicariously liable on this basis for acts of its agents.

Mr. Glassen apparently seeks to press his claim against the remaining defendants in their individual capacities. He argues vaguely that because these defendants "had allegedly held a discriminatory animus in their actions, this would have also satisfied the elements that they intentionally caused the termination of [Mr. Glassen's] employment relationship for an improper purpose or used improper means."

However, as we have pointed out, there is insufficient evidence in the record to support his allegations the defendants violated the Law Against Discrimination by terminating his employment. Because these allegations are the sole basis of his tortious interference claim, that claim also is insufficiently supported by fact.[5] The superior court properly dismissed it.

The superior court's order on summary judgment is affirmed.

SCHULTHEIS, C.J., and BROWN, J., concur.

Review denied at 138 Wn.2d 1019 (1999).

---

[5]Our conclusion makes it unnecessary to address the State's argument that public employees have no recognizable business expectancy in continued employment.