[No. 46715-8-I. Division One. December 24, 2001.]

CATHY BLINKA, *Appellant*, v. THE WASHINGTON STATE BAR ASSOCIATION, ET AL., *Respondents*.

---

[15] The same would hold true for individuals charged with physical control under RCW 46.61.504.

*Jeffrey L. Needle,* for appellant.

*Carolyn Cairns* and *Laura J. Buckland* (of *Stokes, Eitelbach & Lawrence, P.S.*) and *Mary H. Spillane* (of *Williams, Kastner & Gibbs, P.L.L.C.*), for respondents.

COLEMAN, J. — While employed as a staff attorney for the Washington State Bar Association (WSBA), Cathy Blinka was subpoenaed to give deposition testimony in a suit against the WSBA initiated by a former employee. In her deposition, Blinka was asked about discriminatory practices at the WSBA. Blinka's answers were extremely unfavorable to the WSBA and included allegations of sexual harassment, racial discrimination, and abusive management. Following her deposition testimony, Blinka's direct supervisor, Robert Welden, noticed that she became increasingly withdrawn, uncooperative, and displeased to be working under his supervision. Blinka was placed on pro-

bation and ultimately terminated based on her uncooperative attitude, her failure to report several significant personnel problems to Welden, and for what Welden perceived to be inappropriate deposition testimony. Blinka sued the WSBA for retaliatory discharge, wrongful termination, breach of contract, and constitutional tort. Blinka's breach of contract and constitutional tort claims were dismissed on the WSBA's summary judgment motion, and a jury returned a verdict in favor of the WSBA on her retaliatory discharge and wrongful termination claims.

On appeal, both parties focus most of their attention on the retaliatory discharge and wrongful termination claims. Blinka challenges the sufficiency of the evidence supporting the jury's finding on her retaliatory discharge claim and assigns error to the trial court's instruction regarding an affirmative defense to her wrongful termination claim.

We hold that the jury's findings on the retaliatory discharge and wrongful termination claims are supported by substantial evidence. We also hold that Blinka has failed to establish that her termination violated a clear mandate of public policy. Alternatively, we hold that the affirmative defense to Blinka's wrongful termination claim was properly before the jury. For these reasons, we affirm the verdict in favor of the WSBA.

## FACTS

Cathy Blinka was hired as a staff attorney for the WSBA in 1993. She was initially assigned the title of Licensing Director and was responsible for overseeing the WSBA's licensing department and answering ethics inquiries from WSBA members. Blinka was also asked to serve as liaison to the Rules of Professional Conduct Committee and Executive Secretary to the Mandatory Continuing Legal Education Board. Blinka worked under the direct supervision of Robert Welden, General Counsel for the WSBA, who in turn reported to Dennis Harwick, the WSBA's Executive Director.

In November 1994, Blinka and several other WSBA employees complained through their attorney to the

WSBA's Board of Governors about Harwick's management. Specifically, Blinka expressed her concern about Harwick's intimidating and heavy-handed management style and complained of improper sexual comments and innuendo. In its investigation into the complaints, the Board interviewed Blinka and the other employees and assured them that they would not be retaliated against for providing information. Ultimately, the Board found no illegal activity.

Through late 1996, Blinka received favorable performance reviews, with only a few exceptions. In April 1995, Blinka and another employee were reprimanded for sending a memorandum to the Board of Governors concerning staffing and budgeting issues without first consulting Welden. In September 1995, Harwick questioned Blinka's administrative abilities and, in particular, her failure to address problems with the WSBA's Continuing Legal Education accreditation process. In September 1996, Welden again gave Blinka a favorable review but noted her failure to respond to personnel complaints brought to her attention when he was away on vacation. In October 1996, Blinka gave deposition testimony in a lawsuit initiated against the WSBA by a former employee (the *Benjamin* matter). *Benjamin v. Wash. State Bar Ass'n*, 138 Wn.2d 506, 980 P.2d 742 (1999). In the course of the deposition, Blinka was asked whether she had knowledge of sexual or racial harassment or mismanagement at the WSBA. Blinka's testimony in response was highly unfavorable to the WSBA. In several of her answers, Blinka offered unsolicited opinions and testified to alleged instances of discrimination of which she had only secondhand knowledge. Blinka had not brought any of these allegations to Welden's attention.

Following Blinka's testimony in the *Benjamin* matter, Welden began to notice significant problems with her attitude and performance. Specifically, Welden observed that Blinka became increasingly withdrawn and seemed indifferent to anything he had to say. Welden also learned that while he was on vacation, a temporary employee had sexually harassed another employee. The incident had been

brought to Blinka's attention, but she had failed to take any action or report it to Harwick or the human resources manager.

In March 1997, Welden read Blinka's deposition testimony in the *Benjamin* matter at the request of the Board of Governors. He was shocked by the level of hostility and personal animus displayed in her testimony and believed that Blinka had exercised extremely poor judgment by making unfounded allegations based largely upon second-hand knowledge and offering unsolicited opinions concerning the WSBA's potential liabilities.

In May 1997, Welden drafted a performance appraisal placing Blinka on probation. Welden identified three main areas of concern: (1) Blinka's failure to address personnel issues within the licensing department; (2) her increasingly uncooperative attitude and unwillingness to work under his supervision; and (3) the disloyalty and lack of judgment displayed in her deposition testimony. In July 1997, Welden wrote a memorandum to Blinka addressing her continued unwillingness to comply with his directives and in August 1997, he met with her to discuss the same issue. Then, in September 1997, after concluding that Blinka had not remedied the problems that led to her probation, Welden recommended to Harwick that Blinka be terminated. Blinka's employment with the WSBA ended on September 30, 1997.

Blinka sued the WSBA, Welden, and Harwick, claiming retaliatory discharge, wrongful termination in violation of public policy, breach of contract, and constitutional tort liability for violation of article I, section 5 of the state constitution. Blinka's breach of contract and constitutional tort claims were dismissed on summary judgment. Her retaliatory discharge and wrongful termination claims were tried in front of a jury. The jury returned a special verdict in favor of the WSBA. After Blinka's motion for judgment notwithstanding the verdict was denied, Blinka appealed.

## DISCUSSION

■ Generally, when an employment contract is indefinite in duration, either the employer or the employee may terminate the contract at any time, with or without cause. *Roberts v. Atl. Richfield Co.*, 88 Wn.2d 887, 894, 568 P.2d 764 (1977). In this case, Blinka has brought claims under two exceptions to the at-will employment rule. First, Blinka's claim for retaliatory discharge is rooted in RCW 49.60.210, which makes it "an unfair practice for any employer . . . to discharge . . . any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter." Second, Blinka asserts a claim for wrongful discharge in violation of a clear mandate of public policy.

### 1. Retaliatory Discharge

■ Blinka challenges the sufficiency of the evidence supporting the jury's finding that retaliation for her deposition testimony was not a substantial factor in the WSBA's decision to terminate her employment. An appellate court may overturn a jury verdict only when it is clearly unsupported by substantial evidence. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 107-08, 864 P.2d 937 (1994). In other words, "[t]he record must contain a sufficient quantity of evidence to persuade a rational, fair-minded person of the truth of the premise in question." *Canron, Inc. v. Fed. Ins. Co.*, 82 Wn. App. 480, 486, 918 P.2d 937 (1996).

■ "To establish a prima facie case for retaliatory discharge, a plaintiff must show that he engaged in statutorily protected activity, that he was discharged, and that retaliation was a substantial factor behind the discharge." *Vasquez v. Dep't of Soc. & Health Servs.*, 94 Wn. App. 976, 984, 974 P.2d 348 (1999) (footnote omitted). Accordingly, the special verdict form in this case asked the jury, "Was retaliation for opposing what Plaintiff reasonably believed to be racial, sexual, or disability discrimination and/or racial or sexual harassment a substantial factor in the

decision to discharge Plaintiff from employment?," to which the jury replied, "no." The cornerstone of Blinka's challenge to this finding is Welden's statement at trial that Blinka's deposition testimony was a substantial factor in the decision to place her on probation.[1] Blinka suggests that Welden's statement amounts to an admission of retaliatory intent. Furthermore, Blinka argues that this motivation was carried over to the decision to terminate her employment as evidenced by Harwick's statement that in making the decision to fire Blinka, he relied upon the same information that provided the basis for her probation.

■ While the record does demonstrate that Harwick and Welden considered Blinka's deposition testimony in their decision to fire her, the record also contains evidence sufficient to support the jury's finding that their decision was not substantially motivated by retaliation. In fact, the jury specifically found that both Harwick and Welden produced evidence of a legitimate, nonretaliatory reason for Blinka's termination and that that reason was the true basis for their decision to fire her.

Welden's disappointment with Blinka's performance was well documented in her performance appraisals beginning in September 1996—the month before her deposition testimony in the *Benjamin* matter—and continuing until her termination at the end of September 1997. Specifically, Welden criticized her for failing to inform him of personnel problems occurring within her department until they had reached "crisis levels." He perceived her to be uncooperative and unwilling to work under his supervision. He questioned her judgment in light of what he perceived to be inaccurate

---

[1] Specifically, Blinka relies on the following exchange at trial:

Q: Now one of the reasons why you placed Miss Blinka on probation was because of her deposition testimony; isn't that right?

A: Because of the testimony she gave in the deposition, yes.

Q: And in fact that was a substantial factor in your decision to place her on probation, wasn't it?

A: It was one of several substantial factors, yes, it was.

Q: It was a substantial factor; isn't that right, Mr. Welden?

A: It certainly was.

and unfounded accusations in her deposition testimony, which he described as replete with "personal animus." These facts are sufficient to "persuade a rational, fair-minded person" that retaliation for Blinka's deposition testimony was not a substantial factor in the decision to terminate her employment. Therefore, we uphold the jury's finding on this issue.

2. Wrongful Discharge in Violation of Public Policy

An employee may have "a cause of action in tort for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy." *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). There are four elements of a public policy tort case:

(1) The plaintiffs must prove the existence of a clear public policy (the *clarity* element).

(2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element).

(3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the *causation* element).

(4) The defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element).

*Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377 (1996) (citations omitted).

In this case, the parties focus much of their argument on the clarity element. "The question of what constitutes a clear mandate of public policy is one of law." *Dicomes v. State*, 113 Wn.2d 612, 617, 782 P.2d 1002 (1989).

"In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial opinions may also establish the relevant public policy."

*Thompson*, 102 Wn.2d at 232 (quoting *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 380, 652 P.2d 625, 631 (1982).

Blinka asks this court to find the existence of a clear mandate of public policy based upon CR 45[2] and federal and state laws against perjury.[3] Blinka argues that by responding to a legally issued subpoena and giving truthful testimony in a deposition, she engaged in activity that CR 45 and the perjury laws were intended to encourage. In support of her position, Blinka cites *Petermann v. International Brotherhood of Teamsters, Local 396*, 174 Cal. App. 2d 184, 344 P.2d 25 (1959). In that case, an employee was discharged for refusing to perjure himself before a legislative committee. In finding for the plaintiff, the court recognized a public policy against perjury. Blinka also cites *Lins v. Children's Discovery Center of America, Inc.*, 95 Wn. App. 486, 491, 976 P.2d 168 (1999) for the proposition that "it is unlawful for an employer to discharge an employee because the employee . . . performs a public duty or obligation such as serving on a jury."

We agree with Blinka that CR 45 and the laws against perjury provide the foundation for a public policy prohibiting adverse employment action for responding to a subpoena or refusing to give false testimony. While on its face CR 45 sets forth the proper procedure for issuance of a subpoena, it also contains an implied obligation that the party in receipt of a properly issued subpoena comply with the order to appear. *See State v. Dibley*, 38 Wn. App. 824, 828, 691 P.2d 209 (1984) ("Every competent citizen is under an obligation to further the administration of justice as a matter of public policy when summoned by due process of law to give evidence."). Similarly, by criminalizing false

---

[2] Blinka cites CR 45(a)(3):

    **(a) For Attendance of Witnesses**. The subpoena shall be issued as follows:

    . . . .

    (3) *Issuance for Deposition*. To require attendance out of such court before a judge, justice of the peace, commissioner, referee or other officer authorized to administer oaths or to take testimony in any matter under the law of this state, it shall be issued by an attorney of record or by such judge, justice of the peace, commissioner, referee or other officer before whom the attendance is required.

[3] Perjury is a federal crime as defined by 18 U.S.C. § 1621 and is a felony in this state under RCW 9A.72.020.

statements made under oath, the state and federal perjury statutes operate as deterrents to false testimony, but they also inversely imply a witness's obligation to give truthful and forthright testimony. *See* RCW 9A.72.020; 18 U.S.C. § 1621(1).

Our analysis of this issue, however, must also be informed by *Thompson* and its progeny and their cautious approach to application of the public policy exception to the at-will employment doctrine. These cases suggest that " '*courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.*' " *Thompson*, 102 Wn.2d at 232 (quoting *Parnar*, 652 P.2d at 631). "Courts must 'find' not 'create' public policy, and the existence of such public policy must be 'clear.' " *Selix v. Boeing Co.*, 82 Wn. App. 736, 741, 919 P.2d 620 (1996) (quoting *Roe v. Quality Transp. Servs.*, 67 Wn. App. 604, 607, 838 P.2d 128 (1992)).

While we acknowledge that CR 45 and the perjury statutes provide the foundation for a public policy prohibiting adverse employment action for responding to a subpoena or refusing to give false testimony (neither of which occurred here), we decline to recognize the more broad policy Blinka proposes in this case in light of the already-existing protections afforded Blinka under chapter 49.60 RCW (Washington's law against discrimination).[4] As *Thompson* suggests, the public policy exception to the at-will employment doctrine is a narrow one—one that should be recognized only when offensive conduct would otherwise go unredressed. But even if we were to recognize the public policy Blinka suggests, the jury's verdict would be affirmable on the basis of the affirmative defense.

3. Affirmative Defense

▪ Blinka assigns error to the trial court's instruction regarding the availability of an affirmative defense to her

---

[4] As stated earlier in this opinion, the Washington Law Against Discrimination (WLAD) makes it "an unfair practice for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by [chapter 49.60 RCW], or because he or she has filed a charge, testified, or assisted in any proceeding under [chapter 49.60 RCW]." RCW 49.60.210(1).

public policy tort claim. She argues that under the public policy exception to the at-will employment doctrine, deposition testimony enjoys absolute protection. Blinka bases her argument upon the federal courts' distinction between "opposition" and "participation" conduct in cases involving retaliation in violation of Title VII (42 U.S.C. § 2000e-3(a)). Title VII makes it illegal for an employer to discriminate against an employee "because he has *opposed* any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or *participated* in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). In *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989), the court explained the difference between Title VII's opposition and participation clauses:

> The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings. The "exceptionally broad protection" of the participation clause extends to persons who have "participated in any manner" in Title VII proceedings. . . . Thus, once the activity in question is found to be within the scope of the participation clause, the employee is generally protected from retaliation.

Blinka encourages this court to adopt the opposition-participation distinction in public policy tort cases and, in this case, to hold that her deposition testimony constituted participation conduct entitled to absolute protection.[5] Thus, she asks the court to conclude that the affirmative defense instruction was given in error.

As stated in our public policy tort analysis above, we decline to recognize the public policy Blinka suggests in this

---

[5] Blinka concedes that because the *Benjamin* lawsuit was not brought under the WLAD, her deposition in that matter must be considered opposition conduct for purposes of her retaliatory discharge claim.

case. Even if we were to recognize the existence of this public policy as an exception to the at-will employment doctrine, however, it would not mean that an employer would be foreclosed from an opportunity to provide justification for his or her employment decision. Blinka's attempt to import the absolute protection afforded participation conduct under Title VII into the public policy tort context ignores the differences between the conduct protected under each theory. Under Title VII, employees enjoy absolute protection from adverse employment decisions based on their participation in proceedings targeting discriminatory employment practices. By contrast, under the public policy protection Blinka proposes, employees would be afforded this same kind of absolute protection in any case where the employee testifies in a legal proceeding. We decline to recognize such a sweeping protection. We therefore reject Blinka's invitation to adopt the opposition-participation distinction in public policy tort cases and uphold the trial court's decision to instruct the jury regarding the affirmative defense in this case.

The jury was instructed that as a defense to either Blinka's retaliatory discharge claim or her public policy tort claim, the WSBA could establish that Blinka's opposition activity or the manner of her deposition testimony interfered with her job duties so much that she became ineffective in her job. (Special Verdict Form, Question No. 11). However, because the jury found that retaliation was not a substantial factor in the WSBA's decision to fire Blinka, the affirmative defense was implicated only with respect to Blinka's public policy tort claim.

The language of the affirmative defense appears to be crafted after language from *Selberg v. United Pacific Insurance Co.*, 45 Wn. App. 469, 472, 726 P.2d 468 (1986): "When the employee's conduct in protest of an unlawful employment practice so interferes with his job performance that it renders him ineffectual in the position for which he was employed, such conduct is not protected by the statute." While this language has been employed as the basis for an

affirmative defense in retaliatory discharge cases under RCW 49.60.210 and Title VII, other considerations exist in the public policy context that may make other language preferable. Nevertheless, because the *Selberg* language was provided to the jury as an affirmative defense to both the retaliatory discharge claim and the public policy tort claim, and because it was sufficient to allow the jury to evaluate the reasonableness of the WSBA's justification for its decision regarding Blinka's employment, our analysis will focus on whether sufficient evidence exists to support the jury's finding.

In evaluating whether an employee has been rendered ineffectual by his or her opposition activity, "the court must balance the setting in which the activity arose and the interest and motivations of both employer and employee." *Selberg*, 45 Wn. App. at 472. Blinka correctly argues that proof of disloyalty is insufficient by itself to justify her termination. *Selberg*, 45 Wn. App. at 473. In this case, however, Harwick and Welden cited several other factors in their decision to fire Blinka. Welden testified that following her deposition in the *Benjamin* matter, Blinka "was totally withdrawn . . . from any involvement in the department, she would sit in her office with her door closed, she just stopped participating as a member of the department, and was totally indifferent to anything [he] had to say." Welden also testified that Blinka's attitude had a negative effect on morale within her department:

> I felt that I was being ignored, that my leadership was challenged, that I was being put in a position of not being able to have the effective control of the other subordinate employees in the department. Cathy [Blinka] and Karen Tall and Carol Knopf together were having a very divisive influence on the department.

Welden testified that he was frustrated by Blinka's failure to acknowledge the WSBA's concerns regarding her testimony. Most significantly, Welden lost faith in Blinka's judgment based upon her deposition testimony, which he perceived to be riddled with allegations based on second-

hand knowledge and "replete with opinion, argument, and personal animus."

These facts are sufficient to support the jury's finding that Blinka's opposition activity "so interfere[d] with her job duties that she became ineffective in her job." Therefore, we uphold the jury's finding on this issue.

4. Breach of Contract

Blinka argues that the trial court erred in dismissing her breach of contract claim on the WSBA's motion for summary judgment. Blinka asserts that a contract was formed when she agreed to provide the WSBA's Board of Governors with information concerning complaints against Harwick in exchange for the Board's promise not to retaliate against her.

Blinka's contract argument, however, fails for lack of consideration. To the extent that the complaints against Harwick concerned allegations of workplace discrimination, the Board's promise not to retaliate against Blinka did not constitute valid consideration, as such retaliation was already prohibited under Washington's Law Against Discrimination (WLAD). *See Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 584, 790 P.2d 124 (1990) (performance of a preexisting legal obligation is not valid consideration). We also reject Blinka's assertion that her complaints to the Board regarding Harwick's management style were consideration sufficient to establish a binding contract. Consideration sufficient to prevent at-will termination must be consideration *"in addition* to required services which results in a detriment to the employee and a benefit to the employer." *Roberts v. Atl. Richfield Co.*, 88 Wn.2d 887, 895, 568 P.2d 764 (1977). Complying with an employer's request for cooperation in an internal investigation—as Blinka did in this case—does not constitute valid consideration. Thus, we uphold the trial court's dismissal of Blinka's breach of contract claim.

5. Constitutional Tort

Blinka argues that that trial court erred by dismissing her constitutional tort claim on summary judg-

ment. On appeal, she urges this court to recognize a civil cause of action in tort based upon a violation of article I, section 5 of the Washington State Constitution.[6]

As the WSBA points out, Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations "without the aid of augmentative legislation." *Sys. Amusement, Inc. v. State*, 7 Wn. App. 516, 517, 500 P.2d 1253 (1972); *see also Spurrell v. Block*, 40 Wn. App. 854, 860-61, 701 P.2d 529 (1985); *Reid v. Pierce County*, 136 Wn.2d 195, 961 P.2d 333 (1998). In *Hunter v. City of Eugene*, 309 Or. 298, 787 P.2d 881, 884 (1990), the Oregon Supreme Court entertained an appeal to recognize a constitutional tort:

> Lacking legislative guidance, this court is in a poor position to say what should or should not be compensation for violation of a state constitutional right and what limitations on liability should be imposed .... State constitutional history and the subsequent jurisprudential history of no implied causes of action for damages for constitutional violations plainly leave us without any guidance.

The same reasoning has direct applicability to this case. In light of the lack of legislative guidance on this issue, and considering Washington courts' consistent refusals to recognize a cause of action in tort for constitutional violations, we uphold the dismissal of Blinka's constitutional tort claim in this case.[7]

Affirmed.

KENNEDY and ELLINGTON, JJ., concur.

Review denied at 146 Wn.2d 1021 (2002).

---

[6] "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." CONST. art. I, § 5.

[7] Respondent Harwick is also before this court as a cross-appellant alleging several instructional errors by the trial court. Because our decision affirms the jury's verdict in Harwick's favor, we need not reach the issues raised in his cross-appeal.