# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| LORI MACKEY,<br><br>    Appellant,<br><br> v.<br><br>HOME DEPOT USA, INC. dba THE HOME DEPOT STORE #4718, JAMIE KRALL, and JENNIFER ISLES,<br><br>    Respondents. | No. 52293-4-II<br><br>PUBLISHED OPINION |

MAXA, C.J. – Lori Mackey appeals the trial court's dismissal on summary judgment of a lawsuit she filed against her former employer, Home Depot, and two Home Depot managers, Jamie Krall and Jennifer Isles (collectively, Home Depot). Home Depot terminated Mackey's employment after an investigation determined that she had been violating company policies regarding discounts on customer orders. Mackey denied violating the discount policies, and she claimed that the reason for the investigation and her termination was her complaint to the store manager shortly before her termination that Krall had verbally attacked her because of her disabilities. Mackey asserted claims for discriminatory discharge, retaliation for opposing an unlawful practice, wrongful discharge in violation of public policy, and failure to reasonably accommodate her physical disability.

We hold that the trial court did not err in granting summary judgment on Mackey's discriminatory discharge, retaliation, and wrongful discharge in violation of public policy claims because although she made a prima facie case for those claims, Home Depot presented evidence of a legitimate nondiscriminatory reason for her termination and Mackey failed to establish a genuine issue of fact that her complaint about Krall's conduct also was a motivating factor for her termination. In addition, we hold that the trial court did not err in granting summary judgment on Mackey's failure to reasonably accommodate claim because Mackey never notified Home Depot that the accommodation it provided was ineffective or unreasonable.

Accordingly, we affirm the trial court's summary judgment order dismissing Mackey's claims.

FACTS

*Mackey's Employment with Home Depot*

Mackey began working at Home Depot's Vancouver, Washington store in 2006. She later worked as a sales associate in the appliances department.

During her employment, Mackey suffered from depression, post-traumatic stress disorder (PTSD), and degenerative disc disease. She asked for accommodations related to all these conditions. Regarding the degenerative disc disease, Mackey told her supervisors that she could not lift anything over 15 pounds and could not lift anything over her head. Home Depot allowed Mackey to have other employees do lifting tasks that were otherwise part of her duties. Mackey never complained to Home Depot about having to find someone to lift for her.

Mackey received positive ratings on her September 2011 to September 2014 performance evaluations. None of these evaluations mentioned concerns about improper discounting on Mackey's sales.

Home Depot had a number of policies governing the sales staff's ability to give discounts on merchandise to customers. Such policies included prohibiting sales associates from (1) giving double discounts, meaning two separate discounts to the same customer on the same sale; (2) giving volume discounts unless a qualifying customer's order met a $2,500 threshold and the store's volume bid system pre-approved the discount; and (3) giving additional markdowns on or modifying orders already approved for volume discounts. Mackey received training on these policies.

*Incident with Krall*

Mackey alleged that on September 26, 2014, Krall, an assistant manager, verbally berated and attacked her. Krall asked Mackey to explain a situation, but instead of listening she talked over Mackey. Krall told Mackey she was "deflective, and confrontational and that's why management did not like [her]." Clerk's Papers (CP) at 91. Mackey began to cry. She told Krall that she felt she was "being attacked," that because of her depression and PTSD she could not think when she was attacked, and that Krall made her "skittish." CP at 91, 102. Krall told Mackey "we all have problems." CP at 102.

On the morning of September 27, Mackey reported the incident with Krall to Robert Tilton, the store manager. There is no evidence that she said that Krall had confronted her because of her disabilities.

*Asset Protection Investigation*

On October 2, Sonny Lupica, the store's operations manager, observed Mackey return to the managers' office with cash wrapped in a piece of paper. Mackey explained to Lupica that the cash was a refund and that the refund had to be given to the customer this way to ensure the

3

desired delivery date. Lupica later reviewed the transaction Mackey had referenced and discovered that the order violated discount policies.

Lupica investigated further. His review of Mackey's use of the volume bid system showed that Mackey had submitted an extraordinarily high number of volume bids compared with other appliances sales associates. Lupica then reviewed Mackey's accepted bid orders and found she had given $22,000 in additional discounts on these orders despite the fact they had already gone through the bid process. Lupica also discovered that, after receiving volume discounts, Mackey had removed items from some orders and sold the remaining items at the volume discount rate, sometimes selling orders for less than the $2,500 threshold. In total, Lupica found that 29 of Mackey's orders between July 9 and October 3 had double discounts or items removed after an approved volume discount.

Lupica's investigation caused him to contact Home Depot's asset protection manager, Mikoli Weaver. Weaver prepared a report stating that Mackey had used the volume bid system to allow for discounts on appliance orders that were not eligible for volume discounting. In some cases, she also had applied additional discounts to appliances after running them through the volume bid system, selling several items below cost. The investigation had revealed that 25 of Mackey's orders over the previous 90 days had additional price markdowns beyond her level of authorization. Weaver also recorded several integrity issues concerning Mackey, including breaching the cash-handling policy, manipulating orders on computers that other associates were logged into, and improperly using the volume bid system.

Weaver and Krall met with Mackey on October 8 to discuss the investigation results. According to Weaver, Mackey acknowledged that she had on occasion used the volume bid system and provided double discounts. She understood that the extra discounts were above her

authorization level and required approval from an assistant manager. According to Weaver, Mackey admitted that on occasion she had removed items from orders after they had been approved for a volume discount, selling the remaining items at the discounted rate even though the order total no longer met the $2,500 threshold. Mackey denied applying any other discounts beyond her authorization. She also denied using a computer while another associate was logged on or mishandling cash. Weaver referred the matter to human resources for review.

*Mackey's Termination*

Home Depot terminated Mackey's employment on October 9 for violation of its "Acting with Integrity and Honesty/Conflict of Interest policy." CP at 87. The disciplinary notice, prepared by Tilton, cited "Selling, buying or distributing merchandise or services at other than the authorized prices." CP at 87. The notice stated that, although Mackey had not stated how many of her quotes were affected, she admitted to giving double discounts, giving volume bid discounts to non-qualifying customers and non-qualifying orders, and giving multiple customers discounts well above her $50 threshold. The notice further stated that Mackey had given an estimated total of over $17,000 in unauthorized discounts without manager approval.

After her termination, Mackey wrote a statement in response to the disciplinary notice in which she disputed that she had admitted to the accusations against her. Mackey stated that the majority of the orders she submitted to the volume bid desk were not ultimately sold to customers. Mackey disputed that she had ever deliberately inflated a quote in order to qualify for a volume discount. She stated that sometimes she would separate products onto separate orders, but she disputed that this separation meant that the total order did not meet the discount threshold.

Mackey acknowledged that there was accidental "double dipping" on some of her sales because other associates had applied additional discounts to the orders while processing them. She admitted that one incident of double dipping was intentional on her part, but that Krall had authorized the additional discount.

Mackey disputed that she had ever given a customer a markdown over the threshold without manager approval. She disputed that she had actually given $17,000 in unauthorized discounts, and contended that a report of her volume discount bids cross-referenced with a report of her orders sold would rebut this amount.

Mackey also summarized the details of her September 26 incident with Krall, and she stated that she had reported the incident to Tilton.

*Mackey's Lawsuit*

Mackey filed a lawsuit against Home Depot, Krall, and Isles, alleging four causes of action: (1) discriminatory discharge, (2) retaliation for opposing an unlawful practice, (3) wrongful discharge in violation of public policy, and (4) failure to provide reasonable accommodation. All but the wrongful discharge in violation of public policy claim alleged a violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW.

Home Depot moved for summary judgment, arguing that Mackey's termination was justified by the findings of the asset protection investigation and that the accommodations provided to Mackey were reasonable.

In response, Mackey argued that the fact the investigation into her conduct was initiated only after she reported her incident with Krall to store management created an issue of fact precluding summary judgment on her discriminatory discharge, retaliation, and wrongful termination claims. She also denied (1) knowingly violating "any of Home Depot's policies

relating to customer discounts," CP at 102; (2) giving "any sales on items without instruction or approval from management," CP at 103; and (3) giving "double discounts to customers," CP at 103. In addition, Mackey disputed that the accommodation permitting her to seek the help of other employees for lifting tasks was reasonable.

The trial court granted the summary judgment motion and dismissed all of Mackey's claims against the defendants. Mackey appeals the trial court's summary judgment order.

ANALYSIS

A.    SUMMARY JUDGMENT STANDARD

Our review of a dismissal on summary judgment is de novo. *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 231, 393 P.3d 776 (2017). We review all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015). We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Keck*, 184 Wn.2d at 370. A genuine issue of fact exists when reasonable minds could disagree on the facts controlling the outcome of the case. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 864-65, 324 P.3d 763 (2014).

The party moving for summary judgment "has the initial burden to show there is no genuine issue of material fact." *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). A moving defendant can meet this burden by establishing that there is a lack of evidence to support the plaintiff's claim. *Id.* Once the defendant has made such a showing, the burden shifts to the plaintiff to present specific facts that show a genuine issue of material fact. *Id.* Summary judgment is appropriate if a plaintiff fails to show sufficient evidence to establish a question of fact as to the existence of an element on which he or she will

have the burden of proof at trial. *Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co.*, 176 Wn. App. 168, 179, 313 P.3d 408 (2013).

B.       WRONGFUL TERMINATION CLAIMS

Mackey argues that the trial court erred in dismissing her discriminatory discharge, retaliation, and wrongful discharge in violation of public policy claims because she made a prima facie case of each claim and presented sufficient evidence to establish a question of fact as to whether a discriminatory motive could be inferred from the timing between her complaint about Krall's disability-related conduct and Mackey's termination. We hold that the trial court did not err in granting summary judgment in favor of Home Depot on Mackey's wrongful termination claims.

1.       Legal Principles

All of Mackey's wrongful termination claims arise from her allegation that she complained to Tilton, the store manager, about Krall verbally attacking her because of her disabilities. She asserts three causes of action.

First, the WLAD prohibits an employer from discharging an employee because of certain protected characteristics, including a "sensory, mental, or physical disability." RCW 49.60.180(2). Violation of this provision supports a discriminatory discharge claim. *See Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 526, 404 P.3d 464 (2017).

Second, the WLAD prohibits an employer from retaliating against an employee for opposing any discriminatory practices forbidden by the WLAD. RCW 49.60.210. Violation of this provision supports a retaliation claim. *See Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 411, 430 P.3d 229 (2018).

Third, as a narrow exception to the employment at will doctrine, an employer cannot terminate an employee for " 'reasons that contravene a clear mandate of public policy.' " *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 723, 425 P.3d 837 (2018) (quoting *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984)). Violation of this rule gives rise to a claim for wrongful discharge in violation of public policy. *Martin*, 191 Wn.2d at 722-23.

2.    Burden Shifting Framework

Because direct evidence of discriminatory intent is rare, an employee "may rely on circumstantial, indirect, and inferential evidence to establish discriminatory action." *Mikkelsen*, 189 Wn.2d at 526; *see also Cornwell*, 192 Wn.2d at 411. Where the employee lacks direct evidence, Washington has adopted the three step evidentiary burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) for discriminatory discharge claims. *Mikkelsen*, 189 Wn.2d at 526-27; *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 445-46, 334 P.3d 541 (2014). The evidentiary burden-shifting framework is the same for retaliation claims as for discrimination claims. *Cornwell*, 192 Wn.2d at 411. And the same general framework applies to wrongful discharge in violation of public policy claims. *Martin*, 191 Wn.2d at 725-26.

First, an employee must make a prima facie case of discriminatory discharge by showing that he or she was (1) within a statutorily protected class, (2) discharged by the defendant, and (3) doing satisfactory work. *Mikkelsen*, 189 Wn.2d at 527.[1] Where the employee establishes a prima facie case, a rebuttable presumption of discrimination exists. *Id.*

---

[1] Under *McDonnell Douglas*, 411 U.S. at 802, some courts have held that a prima facie case of discrimination also requires plaintiffs to show that after their discharge, the position remained open and the employer continued to seek applicants with qualifications similar to the plaintiff. *Mikkelsen*, 189 Wn.2d at 529. In Washington, this replacement element is not required to prove a prima facie case of discrimination. *Id.* at 528-532.

Second, the burden shifts to the employer, who must " 'articulate a legitimate, nondiscriminatory reason' " for the discharge. *Id.* (quoting *Scrivener*, 181 Wn.2d 446). The employer is not required to persuade the court that it actually was motivated by the nondiscriminatory reason, only that the employer's evidence if taken as true would permit the conclusion that there was a nondiscriminatory reason. *Mikkelsen*, 189 Wn.2d at 533.

Third, if the employer meets this burden, the employee must produce sufficient evidence showing that the employer's alleged nondiscriminatory reason for the discharge was a "pretext." *Id.* at 527. " 'An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer.' " *Id.* (quoting *Scrivener*, 181 Wn.2d at 446-47). The employee is not required to show that discrimination was the only motivating factor for the discharge because an employer's decision may be based on both legitimate and illegitimate reasons. *Mikkelsen*, 189 Wn.2d at 534.

Summary judgment for an employer is rarely appropriate in a discriminatory discharge case "because of the difficulty of proving discriminatory motivation." *Id.* at 527. " 'When the record contains reasonable but competing inferences of both discrimination and nondiscrimination, the trier of fact must determine the true motivation.' " *Id.* at 528 (quoting *Scrivener*, 181 Wn.2d at 445). To avoid summary judgment, the employee must "show only that a reasonable jury could find that discrimination was a substantial factor in the employer's adverse employment action." *Mikkelsen*, 189 Wn.2d at 528.

Here, Mackey has no direct evidence that Home Depot terminated her because of her disability, as retaliation, or in violation of public policy. Therefore, the *McDonnell Douglas* burden-shifting framework applies. *See Scrivener*, 181 Wn.2d at 445.

3.    Prima Facie Case – Discriminatory Discharge

To make a prima facie case of discriminatory discharge, an employee must show that he or she was (1) within a statutorily protected class, (2) discharged by the defendant, and (3) doing satisfactory work. *Mikkelsen*, 189 Wn.2d at 527. Here, the parties do not dispute that Mackey suffered from mental and physical disabilities of which Home Depot was aware or that she was discharged from employment. The issue is whether Mackey established that she was doing satisfactory work. *Mikkelsen*, 189 Wn.2d at 527.

Home Depot presented extensive evidence that Mackey's work was not satisfactory. Lupica, the store's operations manager, conducted an investigation that revealed multiple violations of Home Depot's discount policies. Mackey's termination notice stated that the estimated total of unauthorized discounts Mackey gave without manager approval was over $17,000.

In response to Home Depot's investigation findings, Mackey disputed that she actually had violated Home Depot's discount policies. In her declaration, Mackey stated, "At no time did I ever give any volume discounts that were not authorized or provided from the bid desk after reviewing my submitted bids." CP at 100. She also stated, "I did not knowingly violate any of Home Depot's polices relating to customer discounts at any time and when there was an issue or a question, I spoke with individuals in management. . . . I complied with all of Home Depot's policies and requirements, as they had been explained to me by Home Depot." CP at 102.

Mackey concluded:

29. I did not give any sales on items without approval or instruction from management.

30. I did not give double discounts to customers.

31. I did a good job and followed policies while working for Home Depot.

32. I did apply customer discounts as instructed by Home Depot policies and management and supervisors.

CP at 103. In addition, in her deposition Mackey claimed that Lupica had made a mistake in his investigation and that he had "falsified quite a bit." CP at 58.

Despite Home Depot's evidence that Mackey's work was not satisfactory because she violated company discount policies, for a summary judgment motion Mackey's declaration must be taken as true. *See Keck*, 184 Wn.2d at 368. Mackey expressly denied that she violated any Home Depot policies, gave unauthorized volume discounts, or gave double discounts. She essentially claimed that the findings of Home Depot's investigation were wrong.

Weaver stated in his report of his interview with Mackey that Mackey admitted to violating discount policies. But Weaver's account arguably is inconsistent with Mackey's declaration, and Mackey's declaration must be taken as true.

Mackey submitted evidence that her work was satisfactory. Therefore, we conclude that for purposes of summary judgment, Mackey established a prima facie case of discriminatory discharge.

4. Prima Facie Case – Retaliation

To establish a prima facie case of retaliation, an employee must show that (1) he or she engaged in a statutorily protected activity, (2) the employer took an adverse employment action

against the employee, and (3) there is a causal connection between the employee's activity and the employer's adverse action. *Cornwell*, 192 Wn.2d at 411.

Here, the parties dispute whether Mackey engaged in a statutorily protected activity and whether there was a causal connection between her complaint and her termination.

### a. Statutorily Protected Activity

Mackey stated in her declaration that she complained to Tilton about Krall's behavior the day after it happened. She argues that this was a complaint that she was being discriminated against because of her disabilities. Complaining about discriminatory conduct is statutorily protected activity. RCW 49.60.210; *see Estevez v. Faculty Club of Univ. of Washington*, 129 Wn. App. 774, 799, 120 P.3d 579 (2005).[2]

Home Depot's argument is that we should disregard Mackey's statement in her declaration. It claims that Mackey's statement is not sufficient to show that she actually complained before her termination because it was self-serving, unsubstantiated, and could not be corroborated. However, on summary judgment a nonmoving party's declaration must be taken as true and can create a genuine issue of material fact even if it is "self-serving." *Reagan v. Newton*, 7 Wn. App. 2d 781, 806, 436 P.3d 411, *review denied*, 193 Wn.2d 1030 (2019).[3]

---

[2] It is unclear whether Mackey's complaint related to her disabilities. Mackey's report of the incident does not show that Krall verbally attacked her *because of* her disabilities, only that her disabilities made it difficult to respond. However, Home Depot does not argue otherwise, so we assume without deciding that Mackey's report of her incident with Krall could be interpreted for summary judgment purposes as a complaint that she was being discriminated against because of her disabilities.

[3] Home Depot also argues that Mackey's declaration that she complained the day after the incident with Krall conflicts with her deposition testimony. A plaintiff cannot contradict unambiguous deposition testimony with a subsequent declaration. *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 121, 22 P.3d 818 (2001). But in the portion of the deposition to which Home Depot cites, Mackey did not address the complaint to Tilton.

Accordingly, we conclude that Mackey submitted sufficient evidence to create a reasonable inference – which establishes a question of fact – that she engaged in a statutorily protected activity.

####### b.  Causal Connection

To prove causation, an employee must show that retaliation was a substantial factor in motivating the adverse employment action. *Cornwell*, 192 Wn.2d at 412. Retaliation need not be the main reason for the employment action. *Currier v. Northland Servs., Inc.*, 182 Wn. App. 733, 746, 332 P.3d 1006 (2014). At the summary judgment stage, the employee is required to show only that "a reasonable jury could find that retaliation was a substantial factor." *Cornwell*, 192 Wn.2d at 412-13.

However, the employee also must show that the employer had knowledge that the employee had engaged in protected activity. *Id.* at 413. "[A]n employer cannot retaliate against an employee for an action of which the employer is unaware." *Id.* at 414. An employee can make this showing either by demonstrating that the employer had actual knowledge of the protected activity or that the employer knew or suspected that an employee had engaged in the protected activity. *Id.* at 413, 421.

####### i.  Knowledge

Here, Mackey stated in her declaration that she told Tilton about Krall's behavior before the investigation occurred and before she was terminated. This statement was sufficient for a reasonable jury to conclude that Tilton knew that Mackey had engaged in a statutorily protected activity.

Home Depot argues that Tilton's knowledge is immaterial because the actual decision-maker for Mackey's termination was not Tilton but Robert Beaubian, the district human

14

resources manager. Home Depot emphasizes that Mackey presented no evidence that Beaubian knew or suspected that she had complained about Krall's behavior.

However, the summary judgment record does not establish that Beaubian and not Tilton was the person who decided to terminate Mackey. Home Depot cites only to one ambiguous portion of Mackey's deposition for this proposition, which viewed in a light most favorable to Mackey does not establish that Beaubian was the decision-maker. And Home Depot did not submit any direct evidence that Beaubian was the decision-maker.

Further, Tilton communicated to Mackey that she was being terminated, and he prepared the termination notice. And he was the store manager. In the absence of any evidence that some other person made the termination decision, this evidence creates a reasonable inference that Tilton was at least one of the decision-makers.

ii. Substantial Factor

*For purposes of the employee's burden of showing a prima facie case*, an employee can satisfy his or her burden of showing that retaliation was a substantial factor in a termination based on the employer's knowledge of the protected activity and the proximity in time between that activity and the termination. *See Cornwell*, 192 Wn.2d at 415-16. If the employer knows of the protected activity and the termination follows "shortly thereafter, it is a reasonable inference that these actions were in retaliation" for the activity. *Id.* at 416. Causation " 'may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision.' " *Id.* (quoting *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003)).

Here, Mackey's termination occurred just 12 days after she complained to Tilton about Krall's behavior. We conclude that this proximity in time between the complaint and the

termination is sufficient to create a reasonable inference that, for purposes of showing a prima facie case, retaliation was a substantial factor in the decision to terminate Mackey. *See Estevez*, 129 Wn. App. at 799-800 (concluding that nine days between the employee's complaint and her termination was sufficient temporal proximity to establish a prima facie case of retaliation).

     5.    Prima Facie Case – Wrongful Discharge in Violation of Public Policy

To establish a prima facie case of wrongful discharge in violation of public policy, an employee must show (1) that his or her " 'discharge may have been motivated by reasons that contravene a clear mandate of public policy,' " *Martin*, 191 Wn.2d at 725 (quoting *Thompson*, 102 Wn.2d at 232), and (2) that the public-policy-linked conduct was a significant factor in the decision to discharge the worker. *Martin*, 191 Wn.2d at 723. However, wrongful discharge claims generally are limited to four categories:

> "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing."

*Id.* (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 936, 913 P.2d 377 (1996)).[4]

    a.    Whistleblower Status

As a threshold matter, the parties dispute whether Mackey established a question of fact as to whether she was a "whistleblower." Home Depot argues that she failed to do so because she raised her allegations against Krall for the first time in her response to the termination notice

---

[4] When the employee's case does not fit neatly within one of these scenarios, this court applies a four-part framework articulated in Henry H. Perritt, Jr., *Workplace Torts: Rights and Liabilities* (1991). *Martin*, 191 Wn.2d at 723. But this framework is inapplicable if a claim falls within one of the four traditional categories. *Id.* at 723-24.

and admitted in her deposition testimony that she never complained about disability discrimination before then.

Whistleblowing occurs "where employees are fired in retaliation for reporting employer misconduct." *Becker v. Cmty. Health Sys., Inc.*, 184 Wn.2d 252, 259, 359 P.3d 746 (2015). Mackey's declaration states that she complained to Tilton before her termination that Krall had mistreated her. As discussed above, Mackey's declaration must be treated as true for summary judgment purposes. Therefore, we conclude that Mackey's wrongful discharge claim falls within the whistleblowing category of retaliation claims.

      b.    Clear Mandate of Public Policy

What constitutes a clear mandate of public policy is a question of law that can be established by statute. *Martin*, 191 Wn.2d at 725. We assume that Mackey's complaint about Krall's conduct could be interpreted as a complaint that she was being discriminated against because of her disability. RCW 49.60.010 states that

> practices of discrimination against any of [Washington's] inhabitants because of . . . any sensory, mental, or physical disability . . . *are a matter of state concern*, . . . [and] such discrimination threatens not only the rights and proper privileges of [Washington] inhabitants but menaces the institutions and foundation of a free democratic state.

(Emphasis added). Further, as noted above, complaining about discriminatory conduct is statutorily protected activity. RCW 49.60.210; *see Estevez*, 129 Wn. App. at 799. Therefore, we conclude that discharge may have been motivated by reasons that contravene a clear mandate of public policy.

      c.    Significant Factor

Next, Mackey must show that her complaint about Krall was a significant factor in Home Depot's decision to terminate her. *Martin*, 191 Wn.2d at 725. To do so, she must produce direct

or circumstantial evidence that the public-policy-linked conduct was a cause of her termination. *Id.*

Mackey once again argues that the short time frame between her complaint to Tilton about her incident with Krall and her termination created a causal link between the two events. As discussed above, to show a prima facie case of retaliation an employee can satisfy his or her burden of showing that retaliation was a substantial factor in a termination based on the proximity in time between the employee's protected activity and the termination. *See Cornwall*, 192 Wn.2d at 415-16. We apply the same rule for wrongful discharge in violation of public policy claims.

Here, Mackey's termination occurred just 12 days after she complained to Tilton about Krall's behavior. This proximity in time between the complaint and the termination is sufficient to create a reasonable inference that, *for purposes of showing a prima facie case*, Mackey's complaint was a significant factor in the decision to terminate Mackey. Therefore, we conclude that for purposes of summary judgment, Mackey established a prima facie case of wrongful discharge in violation of public policy.

6. Legitimate, Nondiscriminatory Reason for Termination

In the second step of the *McDonnell Douglas* framework, once the employee makes a prima facie case the burden shifts to the employer, who must articulate a legitimate, nondiscriminatory reason for the discharge. *Mikkelsen*, 189 Wn.2d at 527. We conclude that Home Depot met this burden on all of Mackey's claims.

Home Depot presented evidence that it had a legitimate, nondiscriminatory reason for terminating Mackey: her violation of company discount policies. Home Depot concluded that Mackey had given an estimated $17,000 in unauthorized discounts.

Mackey argues that the trial court failed to view the evidence in the light most favorable to her when it found that Home Depot had a legitimate, nondiscriminatory reason for terminating her without considering her explanation of how her conduct was in compliance with discounting policies. However, for this stage in the *McDonnell Douglas* framework, the employer only has a burden of production, not persuasion, and does not need not persuade the court that it was actually motivated by the nondiscriminatory reasons. *Mikkelsen*, 189 Wn.2d at 533. The employer need only introduce " 'evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.' " *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

Therefore, we conclude that Home Depot satisfied its burden of showing a legitimate, nondiscriminatory reason for terminating Mackey.

7.    Pretext/Discrimination as a Motivating Factor

In the third and final step of the *McDonnell Douglas* framework, the burden shifts back to the employee to produce sufficient evidence to establish a question of fact as to pretext: that the employer's alleged nondiscriminatory reason for the adverse employment action was pretextual or that even if the stated reason was legitimate, discrimination, retaliation, or violation of public policy also was a substantial motivating factor. *See Mikkelsen*, 189 Wn.2d at 527. We conclude that Mackey did not present sufficient evidence to create a genuine issue of material fact regarding this step.

a.    No Evidence of Pretextual Reason

The ways that an employee can show that a stated reason for termination was a pretext include, but are not limited to, " 'that the reason has no basis in fact, it was not really a motivating factor for the decision [or] it lacks a temporal connection to the decision or was not a

motivating factor in employment decisions for other employees in the same circumstances.' " *Scrivener*, 181 Wn.2d at 447-48 (quoting *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738-39, 904 P.2d 793 (1995)).

Here, Home Depot submitted strong evidence that the actual reason Home Depot terminated Mackey was the investigation results. Home Depot concluded that Mackey had repeatedly provided unauthorized double discounts and had otherwise violated company policies regarding discounts. Home Depot believed that Mackey had admitted to violating discount policies in her interview with Weaver. Mackey was told that she was being terminated for improperly applying discounts to sales.

Further, in her deposition Mackey admitted that fair reasons for termination would be (1) improperly discounting sales, (2) giving a discount on the sale of an item without manger approval, and (3) giving double discounts on sales. Home Depot's investigation supported each of those reasons.

Mackey argues that she presented sufficient evidence to establish a question of fact as to pretext because the investigation's findings were not true or accurate and therefore had no basis in fact. She relies on the statements in her declaration that she did not violate discount policies.

However, regarding this step in the framework, whether Home Depot's investigation was completely accurate or whether its conclusion that Mackey had violated discount policies was correct is not dispositive. The question is whether the alleged violations were the actual reason for her termination. Home Depot's action was based on actual evidence derived from the investigation indicating that Mackey had violated store discount policies. The fact that Mackey disagrees with Home Depot's conclusions based on that evidence does not mean that those conclusions were not the actual reason for her termination. *See Chen v. State*, 86 Wn. App. 183,

190-91, 937 P.2d 612 (1997). "An employee's assertion of good performance to contradict the employer's assertion of poor performance does not give rise to a reasonable inference of discrimination." *Id.* at 191.

Mackey did not present any evidence to dispute that Home Depot actually concluded, based on facts uncovered in the investigation, that she violated company discount policies. And she did not present any evidence that this conclusion was not the actual reason she was terminated.

We conclude that there is no genuine issue of fact that Home Depot's reason for terminating Mackey was a pretext for a termination for discriminatory reasons.

        b.    No Discriminatory Motivation

Even if Mackey cannot show that Home Depot's reason for terminating her was pretextual, she still can satisfy her burden under the third step of the *McDonnell Douglas* framework by showing that discrimination, retaliation, or violation of public policy also was a substantial motivating factor for the termination. *See Mikkelsen*, 189 Wn.2d at 527.

Mackey argues that a motivating factor for her termination was that she had complained to the store manager that Krall had berated and attacked her because of her disabilities. She claims that the short period of time between her complaint (September 27) and the termination (October 9) gives rise to an inference that her complaint was a factor in the termination.

Mackey has presented no other evidence suggesting that Home Depot had a discriminatory motivation. Therefore, the question here is whether the timing of Mackey's termination in relation to her complaint, *standing alone*, is sufficient to create an inference of a substantial discriminatory motive sufficient to avoid summary judgment.

As discussed above, an employee can satisfy his or her burden of showing *a prima facie case* of retaliation based on the employer's knowledge of the protected activity and the proximity in time between that activity and the termination. *See Cornwell*, 192 Wn.2d at 415-16. The court in *Cornwell* stated that causation – one of the elements of a prima facie case – could be inferred from proximity in time. *Id.* at 416.

However, the court in *Cornwell* did not state that the proximity in time between a protected activity and termination created an inference *for purposes of showing that retaliation was a significant motivating factor* in the termination.

In *Currier v. Northland Services, Inc.*, the court broadly stated that "if an employee establishes that he or she participated in statutorily protected opposition activity, the employer knew about the opposition activity, and the employee was then discharged, a rebuttable presumption of retaliation arises that precludes summary dismissal of the case." 182 Wn. App. at 747. This statement could be interpreted as holding that protected activity followed by termination is enough to avoid summary judgment on a retaliation claim, even without temporal proximity. However, as in *Cornwell*, the court was discussing the causation element of a prima facie case, not the pretext prong of the *McDonnel Douglas* framework.

The first case the court in *Currier* cited to support the statement quoted above, *Estevez*, 129 Wn. App. at 799, supports this distinction between evidence sufficient to show a prima facie case and evidence sufficient to show pretext. In *Estevez*, the court referenced the proximity in time between the protected activity and the termination and used the same rebuttable presumption language. *Id.* However, the court did so only in determining whether the employee had established a prima facie case. *Id.* at 799-800. When addressing the pretext step, the court did not mention temporal proximity. *Id.* at 800-02. Instead, the court required additional

22

evidence that the employer's legitimate, nondiscriminatory reasons for the termination were pretextual. *Id.*[5]

Further, limiting the rule that temporal proximity between protected activity and termination can create an inference of discrimination to the employee's burden to show a prima facie case makes sense. Showing a prima facie case is merely the first step in the *McDonnell Douglas* framework and often can be a fairly low bar. But in the pretext step, the employee has the burden of establishing a question of fact as to motivation regardless of the employer's evidence that there was a legitimate, nondiscriminatory reason for the termination. That burden necessarily must involve more than mere temporal proximity. Otherwise, the legitimate, nondiscriminatory reason step and the pretext step would be meaningless any time there was temporal proximity between protected activity and termination.

We conclude that the mere fact that Home Depot terminated Mackey 12 days after she complained about Krall's conduct is not sufficient to create an inference that discrimination, retaliation, or violation of public policy was a substantial motivating factor for Mackey's termination.

Without that inference, Mackey cannot sustain her burden of establishing a question of fact as to pretext. Home Depot's stated reasons for terminating Mackey were that (1) she repeatedly had provided unauthorized double discounts and had otherwise violated company policies regarding discounts, amounting to a loss of over $17,000; and (2) Home Depot believed that Mackey had admitted to violating discount policies in her interview with Weaver. Mackey

---

[5] The other three cases the court in *Currier* cited also were addressing the employee's prima facie case. *Vasquez v. State*, 94 Wn. App. 976, 984-85, 974 P.2d 348 (1999); *Kahn v. Salerno*, 90 Wn. App. 110, 130-31, 951 P.2d 321 (1998); *Graves v. Dept. of Game*, 76 Wn. App. 705, 712, 887 P.2d 424 (1994)).

was told that she was being terminated for improperly applying discounts to sales. Further, in her deposition Mackey admitted that fair reasons for termination would be (1) improperly discounting sales, (2) giving a discount on the sale of an item without manger approval, and (3) giving double discounts on sales. Home Depot's investigation supported each of those reasons. And Mackey has not presented any direct or indirect evidence that some reason other than the results of the investigation was a substantial motivating factor for her termination.

We conclude that Mackey did not present evidence that Home Depot's stated reason for her termination was a pretext for discrimination, retaliation, or violation of public policy. Accordingly, the trial court did not err in dismissing Mackey's discriminatory discharge, retaliation, and wrongful termination in violation of public policy claims.

C.    FAILURE TO PROVIDE REASONABLE ACCOMMODATION

Mackey argues that the trial court erred in dismissing her failure to provide a reasonable accommodation claim because she presented evidence that Home Depot's accommodation of her physical disability was insufficient. Home Depot argues that summary judgment was proper on this issue because Mackey failed to notify Home Depot that the accommodation it provided to her was insufficient or unreasonable. We agree with Home Depot.

The WLAD gives employers an affirmative duty to accommodate an employee's disability. RCW 49.60.180(2); *LaRose v. King County*, 8 Wn. App. 2d 90, 125, 437 P.3d 701 (2019). An employee claiming his or her employer failed to accommodate a disability must prove that (1) the employee suffered from a disability, (2) the employee was qualified to do the job at issue, (3) the employee gave his or her employer notice of the disability, and (4) the employer failed to reasonably accommodate that disability. *LaRose*, 8 Wn. App. 2d at 125-26.

"A reasonable accommodation must allow the employee to work in the environment and perform the essential functions of her job without substantially limiting symptoms." *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 777-78, 249 P.3d 1044 (2011). Where multiple potential methods of accommodation exist, the employer is entitled to select the appropriate method. *Id.* at 779.

Home Depot accommodated Mackey's degenerative disc disease by allowing Mackey to have other employees do any required lifting. Mackey argues that this accommodation was unreasonable because it required her to seek out the help of other employees and tell them about her disability before completing the lifting tasks assigned to her.

However, an employer "must be able to ascertain whether its efforts at accommodation have been effective," and therefore an employee "has a duty to communicate to the employer whether the accommodation was effective." *Id.* at 783. If the employee does not communicate to the employer that an accommodation was not effective, he or she cannot maintain a failure to accommodate claim. *See id.*; *see also Gamble v. City of Seattle*, 6 Wn. App. 2d 883, 891-92, 431 P.3d 1091 (2018), *review denied*, 193 Wn.2d 1006 (2019) (framing the issue as to whether the employer was on notice that its previous accommodations were no longer reasonably accommodating the employee's disability and noting the employee's duty to inform the employer that the accommodations were lacking).

Mackey admitted that she never complained to Home Depot that she did not have someone to lift for her or that the accommodation was not adequate. Because Mackey did not communicate to Home Depot that the accommodations it provided were not working, she did not raise a genuine issue of material fact that Home Depot failed to accommodate her degenerative

disc disease. Therefore, we hold that the trial court did not err in dismissing Mackey's failure to accommodate claim.

CONCLUSION

We affirm the trial court's summary judgment order dismissing Mackey's claims.

_____
MAXA, C.J.

We concur:

_____
MELNICK, J.

_____
GLASGOW, J.